RIDLER, Appellant, v. RIDLER.

93  347
s103 471

93  347
115  245

**Estates of Decedents.** Evidence held sufficient to make it a jury question whether services by a child were rendered under an agreement to compensate.

SAME: PRACTICE. In a suit for services, brought by a child against the estate of her father, she may not testify that she was not paid.

SAME. How much money plaintiff had when she began service, how much she spent between that time and her father's death, and how much she had immediately after his death, and whether she then had more property than when she began service, do not tend to show non-payment for the services.

*Appeal from Dubuque District Court.*—HON. J. L. HUSTED, Judge.

TUESDAY, JANUARY 22, 1895.

Proceedings in probate to establish a claim for services against the estate of George Ridler, deceased. A jury was impaneled, and evidence for the plaintiff was submitted. At the close of her testimony, the court directed a verdict for defendant, on his motion, and rendered judgment against the plaintiff for costs. She appeals.—*Reversed.*

*R. W. Stewart* for appellant.

*Longuville & McCarthy* for appellee.

Robinson, J.—The plaintiff is the daughter of the deceased. She seeks to recover the value of her services as nurse and servant, alleged to have been rendered her father during the five years next preceding his death, on his verbal agreement to pay her their reasonable value. The grounds for a motion for a verdict are stated as follows: "First, because there is no evidence tending to show any contract of hire between the claimant and the deceased, and no evidence tending to show that the deceased had at any time agreed to pay claimant for her services other than as an heir at law out of the estate; second, because the testimony fails to show the amount due on the claim of the claimant, or any amount; third, because the testimony fails to establish the claim of the claimant at all, and there is absolute absence of evidence to entitle her to recover; fourth, because the evidence fails to show that the services rendered have not been paid for, and because the whole

evidence is not sufficient to sustain a verdict in favor
of the claimant, if one should be rendered."

I. There was evidence from which the jury
might have found that facts were established by com-
petent evidence as follows: The plaintiff
attended school in Galena, Ill., before the year
1885, for the purpose of preparing herself to do
work as a bookkeeper. In the spring of 1885 she was
offered a place as bookkeeper in Galena, which she
desired to accept. At that time she was about twenty-
three years of age. Her father had been unable to
take care of himself for years, was about seventy-seven
years of age, and required attention in the daytime and
at night. The mother was also quite old, although
younger than the father, and had been crippled for
some years, and was unable to give her husband the
attention he needed. These two people lived alone in
Dubuque. The father had been married twice, and
had six children by his first wife, and two, the plaintiff
and a sister (known in the record as Mrs. J. C. Thomp-
son), by the second wife. All the children but the
plaintiff were married and had families. Under these
circumstances, the plaintiff returned to her father's
house, at his solicitation, in the spring of the year 1885,
and continued to live there until January, 1892, when
her father died. During that time she rendered ardu-
ous services for her parents as housekeeper and nurse,
and received nothing as compensation for what she
did excepting a few dollars each year, which she
obtained from poultry. The amount so realized was
scarcely sufficient to clothe her. If the facts were as
the evidence for the plaintiff tends to show them to be,
her claims are of the highest merit, and justice
demands that she be liberally compensated for her serv-
ices. It is said that the evidence fails to show any
agreement by which the father became liable to pay the

plaintiff anything, and that the presumption is that they were rendered as a member of the family, without any agreement for or expectation of reward. The evidence does not justify such a claim. It is shown that the plaintiff declined the position offered her in Galena, and returned to her father's house with reluctance. A day or two after her return, she had a conversation with her father, in which she said she could not stay at home without compensation, when she had a good position in Galena, where she preferred to stay and make something for herself. Her father then said to her to stay at home, and he would pay her for it. In the summer or fall of the same year, a friend of the plaintiff asked that she might be permitted to complete her studies, but the father said that he could not spare her, and that he intended that she should be paid for her work. What was said was reported to the plaintiff, and she said, "Then I will stay." In October, 1891, the plaintiff and her father had a conversation, in which she expressed dissatisfaction at not being paid for what she was doing. Her father said that there would be plenty to pay her with when he was gone, and that she should be paid at that time. These conversations tend strongly to show that there was an agreement by which the father was to pay to the plaintiff the value of her services. In the absence of contradiction, when considered with undisputed facts, it is, in our opinion, ample to show that such an agreement was made.

In a contest between the heirs of an estate, where one child has sacrificed his own interests to promote the comfort and well-being of his parents, while others have stood by and have permitted him to do it without effort on their part to assist him, the claim of the child for compensation for what he has done should not be looked upon with disfavor. The time during which

the plaintiff labored for her father and the kind of service rendered are shown, and the evidence tends to show that the value of these services was not less than from ten to twelve dollars per week. It is said there was no evidence that she was not paid for what she did, but that is not correct. Mrs. Thompson, who lived near her father, and was well informed in regard to the transactions between him and the plaintiff, testified without objection, in effect, that the plaintiff received nothing for her services, excepting some small sums which were obtained from poultry, and which did not exceed twenty dollars in any year. We conclude that the court erred in sustaining the motion for a verdict.

II.   In view of the conclusion reached in regard to the action of the court in directing a verdict, it is necessary to notice only other questions discussed in argument which may arise on another trial. The plaintiff was asked to state whether her father ever paid to her any money for her services during the five years preceding his death; but the question was objected to as incompetent, under section 3639 of the Code, and the objection was sustained. The ruling was authorized by the decision of this court, in *Van Sandt v. Cramer*, 60 Iowa, 425, 15 N. W. Rep. 259.

The plaintiff was also asked to state how much money, if any, she had when she went home in the spring of the year 1885, how much money she spent from that time until the time of the death of her father; what money she had at the time and immediately after his death, and whether she had more money or property at that time than she had when she went to his place in the spring of the year 1885. Objections to these questions were sustained. In this there was no prejudicial error. If the questions had been asked, and the answers had been favorable to the plaintiff, they would not have shown that she had not been paid in

some manner for the services in question.   For the reasons indicated, the judgment of the District Court is *reversed*.