EFFIE HANKINS, Appellee, v. THOMAS R. YOUNG, Executor, Appellant.

**LIMITATION OF ACTIONS:** Computation of Period—Pleading New
1  Cause of Action. An amendment to a cause of action, though filed after the statute of limitation has run against the claim, is allowable so long as no new cause of action is pleaded.

PRINCIPLE APPLIED: Plaintiff filed her claim against an estate in proper time and pleaded that she entered into a certain contract with deceased. After the time for filing claims had expired, plaintiff amended her pleading by alleging that the said contract was entered into between the deceased and her father, who was acting for her use and benefit. *Held,* the amendment did not plead any new cause of action, and therefore the plea of the statute of limitation was unavailing.

**PLEADING:** Amendment—Contract With Principal Through Agent
2  —Effect. An allegation that plaintiff and deceased entered into a certain contract receives no addition, in legal effect, by an

amendment which pleads that such contract was entered into between deceased and plaintiff's father, acting for plaintiff's use and benefit. Evidence to prove the latter is necessarily admissible under the former allegation.

**LIMITATION OF ACTIONS:** Computation of Period—Belated but Germane Amendment. An amendment to a petition or claim against an estate, amplifying more fully the allegations thereof, is treated as a part of the original filing, and if the original was filed in time, the claim is not subject to a plea of the statute of limitation, even though such amendment was filed after the statute of limitation had fully run against the original claim.

PRINCIPLE APPLIED: An original claim against an estate was filed within the proper time and alleged· that the· deceased and plaintiff entered into a certain contract. After the time for filing claims had expired, an amendment to the claim was filed, alleging that the said contract was entered into between deceased and claimant's father, who was acting for claimant's use and benefit. *Held*, the amendment simply amplified the allegations of the original claim, and that the plea of the statute of limitation was unavailing.

**CONTRACTS:** Acceptance of Offer—Evidence. Evidence reviewed, and *held*, that a proposition by deceased to plaintiff's father for plaintiff's services was accepted by plaintiff and became a binding contract.

**CONTRACTS:** Actions—Services in Family—Recovery—Pleading Express Contract—Effect. He who, in an action to recover for services performed, pleads an express contract, must stand or fall thereon.

**CONTRACTS:** Acceptance of Offer—Acceptance by Conduct. An acceptance of a proposition so as to constitute the same a binding contract may be made by conduct as well as by words. So *held* where the proposition was for plaintiff's services and plaintiff performed the service proposed.

**DAMAGES:** Measure of Damages—Contract for Services—"Generous Sum." The recovery under a contract to pay a "generous sum" for certain services is limited to a sum equal to the fair and reasonable value of the services.

**EVIDENCE:** Hearsay—Inducing Cause of One's Action. When the inducing cause of the action of a person is material, the information upon which such person acted may be stated, without violation of the general rule which excludes hearsay evidence, although such information consists of the speech of· third persons.

PRINCIPLE APPLIED: Plaintiff entered the family of deceased, and for a number of years performed services therein. Her father testified that, before the plaintiff entered upon the work, deceased made a proposition to him that, if plaintiff would come and work for him and his wife, he (deceased) would generously remember plaintiff in his will. To show why plaintiff entered the family of deceased and performed the services, the father was permitted to testify that he told plaintiff what the deceased had said. *Held* proper, and not subject to rejection as hearsay.

*Appeal from Taylor District Court.*—THOMAS L. MAXWELL, Judge.

SATURDAY, FEBRUARY 19, 1916.

PLAINTIFF filed a claim against the estate of George Bix, for services rendered in his family under an express contract to pay therefor. Trial to a jury. Verdict for plaintiff. Claim allowed. Administrator appeals.—*Affirmed.*

*G. B. Haddock* and *W. M. Jackson,* for appellant.

*Frank Wisdom,* for appellee.

GAYNOR, J.—On the 19th day of November, 1912, the plaintiff filed, in the district court of Taylor County, a claim against the administrator of the estate of George Bix, deceased, in the sum of $1,000. She based her claim upon the following alleged facts, to wit:

On or about July, 1901, said George Bix made and entered into an oral contract with the claimant that, if she would come and live in his family for four years and treat him and his wife with the care and kindness usually given by a daughter, and do the work and take care of him and his wife, he would clothe her, furnish her board and lodging, and, at his death, would provide by will a generous allowance and compensation for her services, attention and care; that, relying upon such promises, she did, on or about July, 1901, go to the home of George Bix and live in his family and perform

all the services required of her until September, 1905; that these services were reasonably worth the sum of $1,000; that said George Bix breached said contract and agreement in this, that on his death he neglected to make any provision for this claimant.

On the 16th day of May, 1913, the plaintiff amended her petition or claim, alleging that the agreement referred to, as made between George Bix and herself, was not made with her personally, but with her father, John I. Bunker, for her use and benefit, to which agreement she consented, and thereafter she performed all the services required of her by her contract. A demurrer was interposed to the petition as amended, on the ground that the amendment set up a new cause of action, in that it now claims that the contract sued on was made between John I. Bunker, the father of the claimant, and the deceased, whereas the original petition claimed that the contract was made between George Bix and the claimant; and that the amendment to plaintiff's petition created a new cause of action which is barred by the statute of limitations, having been filed more than twelve months after administration of said estate had been taken out. This demurrer was overruled, and to this, defendant excepts. Thereupon the defendant filed an answer, in which he denies the allegations of claimant's petition, except as hereinafter admitted. Admits that George Bix died on or about January 8, 1912. The defendant further alleges facts upon which he predicates the same defense raised by the demurrer, to wit, that the action is barred by the statute of limitations, and further alleges that the plaintiff came to the family of the said George Bix, to live with said George Bix and family as a member thereof, and was to do for her board and clothing only; that she received board and clothing while she so resided, and is entitled to nothing more. Further allegations are interposed as to her treatment of the deceased and his wife. Upon the issues thus tendered, the cause was tried to the court and jury, and a verdict returned for the plaintiff in the sum of $1,000. The

claim being allowed in that sum against the estate of George Bix, the administrator appeals.

The first error relied upon for reversal is that the court erred in permitting the claimant to file an amendment to her petition. This error is predicated on the thought that the amendment sets up a new cause of action and

1. LIMITATION OF ACTIONS: computation of period: pleading new cause of action.

was not filed until more than 12 months after letters of administration had been issued, and was, therefore, barred by the statute of limitations.

The second error involves the same thought, and the complaint is that the court erred in permitting the plaintiff to offer and introduce evidence tending to show a contract between her father and George Bix, because no such claim was made in the original petition.

To properly dispose of these errors, requires us to determine what *the cause of action was* upon which plaintiff relied for recovery in her original petition, and what the cause of action was as alleged in the amendment to her

2. PLEADING: amendment: contract with principal through agent: effect.

petition. The allegation of the original petition is that George Bix made an oral agreement with the claimant that, if she would live, etc., in his family, he would provide by will a generous allowance, and compensate her for services, attention and care. The contract is the basis of the action. The services she claims were rendered under this contract. The amendment does not allege any new contract, but says that the contract relied upon was made through her father for her use and benefit, and that she consented to such contract and under it entered upon the performance of the duties required of her. The contract alleged is the same. The allegation as to the party through whom the contract was made differs. Under the original claim, it would be competent for the plaintiff to show that the contract relied upon was made by her father for her use and benefit; that she accepted the contract so made, and thereunder discharged the duties required by the

terms of the contract. The amendment added nothing to this right. Though the father, in the strict sense, was not an agent acting for the daughter, yet he did, in fact, act for her in this transaction. He received the proposition made by the deceased; communicated it to the plaintiff; she accepted and acted upon it. It therefore became the contract of the plaintiff with the deceased.

As bearing upon this point, see *Poole, Gillam & Co. v. Hintrager,* 60 Iowa 180. In this case, the holding is that, where the petition alleges a contract with the defendant, the plaintiff may show that it was made with the agent of the defendant, for the use and benefit of the defendant.

In *Hammond v. S. C. & P. R. Co.,* 49 Iowa 450, it is held that an amendment to a petition does not state a new cause of action, when it does not change the nature of the claim, and when the same evidence is admissible under the original petition as would have been under the amended one.

Where an amendment is germane to a cause of action originally stated, and amplifies more fully the statements of an original claim, the amendment relates back to the date of the original filing and is a part thereof; and, 3. LIMITATION OF ACTIONS: computation of period: belated but germane amendment. if the original was filed in time, the amendment will be so considered. As bearing upon this question, see *Sachra v. Town of Manilla,* 120 Iowa 562. See also *Gordon v. Chicago, R. I. & P. R. Co.,* 129 Iowa, at 750. We find no error in the action of the court in respect to the amendment.

It will not be convenient to take up the errors relied upon by the plaintiff in the order, numerically, in which they are assigned. We will endeavor to treat each proposition, however, in all the fullness with which it appears in the argument of counsel, as we proceed with the opinion.

It is alleged by plaintiff that the proposition made by the deceased to plaintiff's father did not constitute a contract available to this plaintiff, or afford a basis for action on her behalf, for the reason that the contract was not accepted at

the time it was made. There is no occasion to cite authority to establish the proposition that an offer, unaccepted, makes no binding contract, and that the acceptance must be on the terms of the offer that it may be binding on both parties.

4. CONTRACTS: acceptance of offer: evidence.

The record in this case discloses that John I. Bunker is the father of the complainant; that the complainant was, at the time it is alleged the contract was made, residing with one Smith. He testifies that deceased came to him one day and wanted to know if Effie (the claimant) would come and live with him and his wife. His answer was: "I don't know. I think she has got a good home there"—meaning at Smith's. Deceased then said:

"If she will come and live with me until she is of age or married, I will board and clothe her, if she will treat us as a daughter should. We will treat her the same as our own child, and I will remember her in my will and make ample provision for her services."

To which proposition, he says he replied as follows: "If Effie wants to make the change, I guess it will be all right with me." He further says that shortly afterwards he talked with claimant about it; that he told her of the agreement or proposition made by Mr. Bix. He says, "I explained the talk I had with Mr. Bix and what he agreed to do"; and says that she came to him shortly afterwards, probably a day or two, and wanted to go, and he told her it was all right with him.

The plaintiff testifies that she learned from her father what the agreement was between him and Mr. Bix as to what they would do for her if she went to live with them; that she went to live in the Bix family in 1901; that she was then 16 years of age; that thereafter, she did the housework and chores out of doors, cooking, washing and ironing and scrubbing, did part of the mending and sewing for the family, and general housework.

"Mrs. Bix was not very strong. Part of the time, she was sick in bed, and then I nursed her, besides doing the work.

Sat up with her while she was sick, until she would tell me
to go to bed. Prepared all the meals for the family; brought
her her meals. Mr. Bix was 66 or 67 years old when I went
there. He also was quite poorly and was down sick, part of
the time.''

There is evidence that she did the outdoor work, mowed
and raked the lawn, carried in wood and cobs and the like,
took care of the horses, unloaded coal from the wagon into the
coalhouse, unloaded corn into the crib, mixed mortar for the
plasterer and carried it to him; that Mr. Bix kept two horses
all the time; that he had one cow all the time, and sometimes
two; had three or four acres of pasture on which he kept
stock; that the plaintiff resided in the Bix family and per-
formed the labor as above indicated until 1905. There is
evidence that, while she was residing in the Bix family, Mr.
Bix was heard to say that, if Effie stayed with them until
she was 18 or married, he expected that the home would be
hers when they got through with it.

Mrs. Bix, widow of the deceased, testified:

''She came to stay at our house for her board and clothes,
and that was all she was to get. She came immediately after
making the arrangement. She lived with us four years. I
talked over the arrangement with her as to what she should
get on coming here. It was her clothes and board. Yes, I
talked that over with her. I also talked it with her father.
I told him she was to get her clothes and board and that was
all she was to get. While she lived with us, we bought her a
bicycle, a hammock, a ring and a watch. Mr. Bix bought a
piano and gave her music lessons.''

She said it wasn't her understanding that Effie was to get
the piano, and she didn't get it.

It does not appear from the testimony of Mrs. Bix when
she had these talks with the plaintiff. It discloses, however,
that she understood that there was some arrangement made
with the plaintiff, touching compensation to be paid for serv-
ices rendered. She does not say that the claimant made any

statements, or, if she made any, what the statements were. She says she talked it over with the claimant. She talked it over with the claimant's father, and told him that she was to get but her clothes and board. She does not disclose any statements made by her husband touching the matter, or any conversation with him as to the consideration to be paid. It appears that she became offended with the claimant before the claimant left. This attitude towards the plaintiff seems to have grown out of the fact that she conceived the idea that the girl was trying to work her husband for money. She seems to have been offended by the evidence of affection on the part of this girl for the old gentleman. It seems that, whether a part of her duties or not, she washed the old gentleman's neck and ears for him on Sunday mornings. She said that she did this because the water he used was too hot for Mrs. Bix to handle.

This old lady, at the time of giving her testimony, was very deaf. Her memory was poor. She testifies: "I don't recollect the year she came or the time she left, or the year I moved to Newmarket, or the year I got married."

The contention of the defendant is that the plaintiff's claim is based upon a specific contract made with the father of the claimant, and that the recovery, if at all, must be had upon this contract; that the evidence fails to establish any such contract; that the evidence shows only that the claimant was a member of the family of the deceased, and, as such, remained for the period claimed; that, under such circumstances, no recovery can be had, without proof that the services were rendered under a specific contract to pay for the same.

It does not make much difference, so far as the legal phase of this case is concerned, how you term this agreement— whether you call it a proposition to Bunker for plaintiff's services and accepted by her, or a contract with the claimant. The fact is, as disclosed by the evidence, that the deceased made a proposition to plaintiff's father in these words: "If

she (meaning the claimant) will come and live with me until she is of age or married, I will board and clothe her and will remember her in my will, and make ample provision for her services." The father communicated this proposition to this claimant. Thereafter, she came to her father and said she desired to go to the deceased's home. He told her it was all right with him. She did go, and did perform all the services required of her, under the proposition made by the deceased, and remained there, performing these services, for four years.

The deceased's widow testifies that she came under some arrangement. She does not pretend to state that she knew of any arrangement made between the deceased and the girl's father or the girl. Her testimony relates rather to her understanding than to any contract between the deceased and the girl.

If she went to live there as a member of the family, performing only such services as are required of members of the family—those reciprocal services that grow out of the family relationship—she could not recover without proof of an express contract to pay for the services, or unless it appeared that the services were rendered under such conditions and circumstances and the relationship was such that it was apparent that the deceased contemplated paying her for services, and that she expected pay for her services. This doctrine was laid down in *Scully v. Scully*, 28 Iowa 548, and has been followed ever since. In this case, however, she pleads an express contract, and must recover, if at all, upon proof of an express contract, and this we think she has done.

5. CONTRACTS: actions: services in family: recovery: pleading express contract: effect.

It is contended, however, that there is no proof that she accepted the terms of the contract; that the offer could not be binding until accepted. It has been held in a number of cases—and the holding rests not only upon authority, but upon reason—that one to whom a proposition is made may accept by conduct, and, by such acceptance, make the contract

6. CONTRACTS: acceptance of offer: acceptance by conduct.

as conclusively binding as if accepted in words. The proposition was made without reservation as to time for acceptance. It was communicated to her, and the jury was justified in finding, under this record, that she entered the home of the deceased in pursuance of the proposition, and thereby accepted the terms of the contract. This doctrine is well exemplified in *Goodpaster v. Porter & Courtney,* 11 Iowa 161, 163, in which it is said:

"A contract includes a concurrence of intention in two parties, one of whom promises something to the other, who, on his part, accepts such promise. Hence, consent or acceptance is indispensable to the validity of every contract; for, as A cannot, by the mere act of his mind, transfer to B a right in property without a concurrent intention on his part to accept it, neither can A, by his promise, confer a right against himself until B has, by his acceptance of it, concurred in the intention of acquiring such right. But if A promises B to pay him a sum of money if he will do a particular act, and B does the act, the promise thereupon becomes binding; although B, at the time of the promise, does not engage to do the act. 'In the intermediate time', says Wilde, J., in *Train v. Gold,* 5 Pick., 380, 'the obligation of the contract or promise is suspended; for, until the performance of the conditions of the promise, there is no consideration, and the promise is *nudum pactum;* but, on the performance of the condition by the promisee, it is clothed with a valid consideration which relates back to the promise, and it then becomes obligatory.' While there can be no contract without consent of all the parties to it, it is not necessary that their wills shall concur at the same instant."

In the case of an order for goods, the delivery of the goods in pursuance of the order is an acceptance of the order. *McCormick H. M. Co. v. Markert,* 107 Iowa 340; *Franklin v. Tuckerman,* 68 Iowa 572, 574. This was an action to enforce specific performance of a contract to convey land, in consider-

ation of services rendered. It was claimed in this case that the deceased, being in feeble health and unable to care for herself and business, agreed with the plaintiff that, in consideration that the plaintiff remained with her and cared for her and her property during the balance of her life, she would convey to her at her death certain property; that, in pursuance of such promise, she did remain with the deceased and cared for her and nursed her; that the agreement was never performed. The court said:

"It must be admitted that there is an entire absence of direct and positive evidence of an agreement by plaintiff to accept the terms of the offer. We think, however, that the facts and circumstances proven lead necessarily to the conclusion that there was an acceptance by her of the terms of the offer."

The opinion then recites the things done by the plaintiff which conform substantially with what she claimed she was to do as a consideration for deceased's promise. The court further said:

"We cannot presume that she continued to wear out her life for nearly four years in that hard service merely for the benefit of one to whom she owed no duty. It would be against both reason and experience to do so. The only reasonable presumption from the circumstances is that she had accepted the terms of her stepmother's offer, and that she rendered the services in pursuance of her agreement."

We think that the evidence discloses such facts and circumstances as justify the conclusion that the services were rendered, in this case, in acceptance of the proposition made by the deceased to plaintiff's father.

Complaint is made of the instructions of the court. We think that some of the criticisms were made under a misapprehension of what the instructions, as given to the jury, actually contained. It seems that counsel was furnished with copies of the instructions before they were read; that the

court, however, before submitting the instructions to the jury, made corrections which obviate some of the objections urged.

· It is said that the court erred in giving Instruction 4, in that the court told the jury, in substance, that, if they found for the claimant, they should allow such sum as would constitute a generous allowance. The error claimed in this instruction lies in the fact that there was no evidence of what would be a generous allowance.

7. DAMAGES: measure of damages: contract for services: "generous sum".

It is conceded that, where services are rendered, either under an implied contract or under an express contract, if the compensation is not determined beforehand, the plaintiff may recover for the services so rendered, such sum as is the fair and reasonable value of the services. .This is elementary. The misapprehension as to the instruction lies in the fact that, before the instructions were read to the jury, the court interlined the instruction, and, when read and submitted to the jury, it was as follows:

"You will observe that it is claimed by the claimant that, by the express terms of the contract, the said George Bix was to provide by will for a generous allowance to the claimant as compensation for her services. And if you find for the claimant, you will allow her such amount as you find from the evidence would constitute such compensation as was agreed upon. No definite sum being fixed by the agreement, the amount of the same must necessarily be left to the jury to determine from all the facts and circumstances an amount that would be the reasonable value of said services and in accordance with the agreement of the parties, if you find that such an agreement was made. But in no event can you allow an amount more than that claimed for in the petition, to wit, the sum of $1,000."

We find no reversible error in this instruction.

Some objection is urged to the action of the court in permitting the father of the girl to testify that he communicated

to her Mr. Bix's proposition, and to the testimony of the girl
that her father told her what Mr. Bix said.
The objection is that it is hearsay. This testi-
mony was not offered for the purpose of prov-
ing what Mr. Bix said, nor was it to be con-
sidered as substantive evidence as to what Mr.
Bix said. It was competent for the purpose of showing that
Mr. Bix's proposition was communicated to this claimant as
bearing upon her subsequent conduct, and as explaining her
conduct in going to the Bix home. We need scarcely cite
authority for this statement.

8. EVIDENCE: hearsay: in-
ducing cause of one's action.

The plaintiff, in order to recover, must establish the mak-
ing of the offer; that it was brought to her knowledge; that
she accepted and performed the services. The offer was estab-
lished by the testimony of her father. That she performed the
services is established by an abundance of evidence. It was
important to connect the proposition and her subsequent con-
duct. Therefore it was important and material to show that
the proposition was communicated to her. As exemplifying
the rule, see Selected Cases, Wigmore (2d Ed.) 704. See also,
*Giddings v. Iowa Savings Bank,* 104 Iowa 676. This was an
action to recover possession of a promissory note and mort-
gage. It was claimed that the plaintiff was induced to execute
the mortgage by threats. The court said:

"The wife was not present at the interview between the
bank officers and Giddings when the alleged threats were
made, but plaintiffs claim that she was told by him what had
occurred when he came home in the evening. Both husband
and wife were permitted, over defendant's objection, to testify
to what was said by the husband to the wife on this occa-
sion."

The court held this evidence admissible.

Upon the whole record, we find no reversible error, and
the cause is—*Affirmed.*

EVANS, C. J., LADD and SALINGER, JJ., concur.