HANNA HEGGEN et al., Plaintiffs, Appellees, v. CLOVER LEAF COAL AND MINING COMPANY, Defendant, Appellant.

No. 42310.

MARCH 13, 1934.

S. B. Allen, for appellant.

Vernon W. Lynch, for appellees.

KINTZINGER, J.—On March 5, 1930, the parties hereto entered into a written lease and agreement for the rent of certain property to the defendant for coal mining purposes, at an annual rental of $50 per year, commencing with the 1st of January, 1931. The lease also contained the following agreement:

"It is hereby agreed that first parties shall have the right to make connection with or attachment to the present power line of second party to * * * obtain electricity for * * * their residence situated on the premises * * * but first parties shall maintain a separate meter to measure the * * * electricity so used, and pay the charges therefor, and second party shall in nowise be responsible for any damages incurred by said attachment or by the use of the electricity herein mentioned, or the operation or maintenance of said extension to the residence of first parties."

In its answer defendant alleges that plaintiff, in a subsequent oral contract, agreed to pay the reasonable charges for the electricity used by plaintiff, not less than a minimum of $6 per month, which amount was to be offset against the rents of the property.

The plaintiffs in reply pleaded a verbal agreement entered into by the parties immediately after the execution of the lease, under which plaintiffs claim that defendant agreed to pay for the cost of the line carrying the wires from plaintiffs' house to defendant's power plant. Defendant denied entering into such agreement; and also claims that such an agreement, if entered into, was without consideration and void.

The evidence shows that no cash rentals had been paid for two years and that $100 was due the plaintiffs for said rent, unless the defense alleged in defendant's answer was established.

The original lease provided for the payment of the charges for electricity to the defendant. Defendant further answers that the charges for the electricity used by the plaintiffs amount to more than $200, which more than offsets the amount claimed by plaintiffs, and that plaintiffs orally agreed to accept the electricity furnished as an offset against the rents.

The only evidence offered by plaintiffs to establish the oral agreement that defendant was to pay the cost of constructing the line from plaintiffs' house to defendant's power plant was that of one of the plaintiffs. He testified in substance:

"Soon after the lease was executed, he told Mrs. Christianson that he wanted the line brought over to his house; that he would put in a heavy line so that there would be as little leakage as possible; that the line cost him more than it would if he hadn't used this heavy wire; that he would put the line in and they (the defendant) could refund what it cost in electricity; that he would use the juice

and let it apply on putting in the line; that the electricity he was using would be credited against the cost of the line."

There appears to be no evidence in the record tending to show that Mrs. Christianson, the former president, or any other officer of the defendant company, ever agreed or assented to the foregoing statements alleged to have been made to Mrs. Christianson by the plaintiffs.

The defense set up in defendant's answer that the charges for electricity used by the plaintiffs were to be offset against the rents was not denied in plaintiffs' reply. Plaintiffs, however, seek to avoid this defense by alleging in their reply that defendant had agreed to pay the cost of constructing the line from plaintiffs' house to the power plant and pay the cost thereof by furnishing electricity to the plaintiffs. Plaintiffs claimed that the cost of constructing the line was $80 and that they had used less than $80 worth of electricity.

The evidence also shows that the usual minimum charge for electricity in that neighborhood was $6 per month, and that if this amount was credited upon the defendant's rent, it would more than offset the rent claimed.

I. One of the errors assigned as ground for reversal is that the lower court erred in overruling appellant's motion to dismiss the defense set out in plaintiffs' reply because the evidence fails to show that there was any such contract.

It is elementary law that in order to establish or modify a contract, it must be shown there was a meeting of the minds. One party to a contract cannot alter its terms without the assent of the other. The minds of the parties must meet as to the proposed contract or its modification. 13 C. J. 591, section 606; Hambleton v. Jameson, 162 Iowa 186, 143 N. W. 1010; Rule v. McGregor, 117 Iowa 419, 90 N. W. 811; Atlanta Buggy Co. v. Hess Spring & Axle Co., 124 Ga. 338, 52 S. E. 613, 4 L. R. A. (N. S.) 431; Mooney v. Daily News Co. of Minneapolis, 116 Minn. 212, 133 N. W. 573, 37 L. R. A. (N. S.) 183; Picard v. Beers, 195 Mass. 419, 81 N. E. 246; Fraser v. Fraser's Estate, 42 Mich. 275, 3 N. W. 931.

The evidence in this case fails to show that Mrs. Christianson ever assented or agreed to the alleged subsequent agreement. The evidence offered in relation thereto was simply a statement of the plaintiff as to "what he would do." It fails to show that Mrs. Chris-

tianson, the former president, or any other member of the defendant company, in any manner, ever agreed that the company should pay the cost of the connecting line. The only statements made in reference thereto were those made by Mr. Heggen, and he does not say they were agreed to, consented to, or acquiesced in, by defendant.

The evidence also shows that a new president was elected immediately after the lease was signed by Mrs. Christianson, and it fails to show that she was still president of the defendant company at the time the alleged statements were made to her by Mr. Heggen.

The written lease already executed provided for the making of this connection by the plaintiffs and that defendant should "in nowise be responsible for any damages incurred by said attachment or by use of the electricity herein mentioned, or the operation or maintenance of said extension to the residence of the first parties."

From the evidence introduced, we believe that the plaintiffs have failed to establish the contract alleged in their reply.

■ II. Defendant further alleges that even though such a contract was entered into, or even though the original lease was modified in the manner claimed, there was no consideration for such modification and the same is therefore void. The law is well settled "that a subsequent parol agreement modifying a previous existing contract must be supported by a valid consideration." 1 Elliott on Contracts 211; Handrahan v. O'Regan, 45 Iowa 298; Carruthers v. McMurray, 75 Iowa 173, 39 N. W. 255; Wheeler v. Baker, 59 Iowa 86, 12 N. W. 767; Meginnes v. McChesney, 179 Iowa 563, loc. cit. 576, 160 N. W. 50, L. R. A. 1917E, 1060; Ayres v. C., R. I. & P. R. Co., 52 Iowa 478, 3 N. W. 522; Runkle & Fouse v. Kettering, 127 Iowa 6, 102 N. W. 142.

In Meginnes v. McChesney, 179 Iowa 563, loc. cit. 576, we said:

"Nor is a subsequent promise to do something not required by a previous contract without a new consideration binding. Handrahan v. O'Regan, 45 Iowa 298. The doing of that which a party is already under contractual obligation to do will not support a further promise to pay an additional price. * * * In Stilk v. Myrick, 2 Campb. 317. Lord Ellenborough held that an agreement to pay seamen extra for what they were bound by their articles to do was void, and a like ruling was made in Bartlett v. Wyman, 14 Johns. (N. Y.) 260, where a master agreed to give more wages if the seamen would not abandon the ship. In Davis v. Morgan, 117 Ga. 504,

43 S. E. 732, 61 L. R. A. 148, 97 Am. St. Rep. 171, defendant had engaged to work for plaintiff a year at $40 per month. Some time after he had begun work he was offered $65 per month by a company in Florida and claimed that, on advising his employer of this, he was promised $10 per month additional compensation. This promise was held to have been without consideration."

The evidence in this case shows that the line connecting plaintiffs' house with defendant's power plant was located entirely upon plaintiffs' property. There is no showing that the construction thereof was of any advantage to the defendant, nor that defendant received any other consideration for the alleged subsequent oral agreement. The plaintiff, in constructing said line, could not have relied upon defendant's promise to pay the cost thereof because there was no agreement, and because plaintiff was not requested by the defendant to install said connection; whereas the evidence all shows that it was made solely in plaintiffs' own behalf. It may be true that if plaintiffs suffered any disadvantage because of making such connection, such a disadvantage might be a consideration for a promise to pay therefor, but as said in Handrahan v. O'Regan, 45 Iowa 298, loc. cit. 300:

"To have that effect [of a consideration] it must appear that the disadvantage was suffered at the request of the promisor, expressed or implied. There is no evidence of such fact in this case."

Likewise it may be said in the case at bar that any expenses or disadvantages incurred by the plaintiffs were not incurred at the request of the defendant, and were without a new consideration for the alleged promise. If a new contract was made, or an existing one modified, it must appear that some consideration passed between the parties. We fail to find the existence of any such consideration, and therefore believe the court erred in not sustaining defendant's motion to dismiss the plaintiffs' reply.

Other errors are alleged, but in view of the foregoing conclusions, a consideration of them is unnecessary.

For these reasons we believe the court erred in failing to dismiss plaintiffs' reply. The judgment of the lower court is therefore hereby reversed.

CLAUSSEN, C. J., and EVANS, STEVENS, KINDIG, DONEGAN, and MITCHELL, JJ., concur.