SIEBRING MANUFACTURING COMPANY, appellee, v. CARLSON HYBRID CORN COMPANY, appellant.

No. 48597.

(Reported in 70 N.W.2d 149)

924

MAY 3, 1955.

Mallonee & Mallonee, of Audubon, and Brody, Parker, Miller, Roberts & Thoma, of Des Moines, for appellant.

Fisher & DeWaay, of Rock Rapids, and H. Wayne Black, of Audubon, for appellee.

WENNERSTRUM, C. J.—Plaintiff brought an action at law wherein it sought to recover from the defendant claimed balance due on an account in the amount of $19,753.02. It had manufactured and delivered to the defendant-company a large number of corncrib roofs. An original agreement had been entered into on or about the 26th day of August, 1949. The quoted price at that time was $60 each for an 18 foot 8 inch corncrib roof and $44.40 each for a roof 14 feet 8 inches in size. Plaintiff alleged this contract was modified on or about September 10, 1949, by an oral agreement wherein the price was increased to $72 and $50 each respectively. The defendant denied the claimed oral modification, contended this claimed modified contract was without validity, and was unenforceable because of the absence of any new consideration. The defendant thereafter counterclaimed for damages basing its contentions on breach of warranty, a breach of the contract because of the late delivery of the roofs, and the further claim those furnished did not meet the requirements of the defendant. Upon trial the jury returned a verdict for the plaintiff in the amount of $17,529.34 with interest and costs. The defendant has appealed.

On July 23, 1949, the defendant wrote the plaintiff-company a letter wherein inquiry was made whether it would be interested in manufacturing corncrib roofs for it. Thereafter Claude Siebring and his son Owen, representing the plaintiff, and Elmer Carlson, representing the defendant, met and discussed a possible arrangement and agreement. On August 23, 1949, the plaintiff wrote the defendant the following letter: "We wish to confirm our telephone conversation of today, quoting a price of $60 each for the 18'8" roof and $44.40 each for the 14'8" roof. We ask that you please send in a confirmation order to cover the 2000 roofs."

On August 26, 1949, the defendant-company wrote a letter to the plaintiff as follows: "This letter will confirm our order for 2000 crib roofs, and we wish approximately 1000—18 ft. 8 in. and 1000—14 ft. 8 in., but we will advise you of any change in ratio of the two sizes. The agreed price is $60 and $44.40 respectively, subject to 1% discount on each 1000 or multiple thereof. We are unable to get delivery of 18 ft. 8 in. roofs for

the 1600 bushel crib. Please advise if the ones you have will be satisfactory for our immediate requirements. We will have to have some roofs not later than the 30 or 31 of this month. Advise immediately."

On August 29, 1949, the plaintiff replied to the defendant's letter as follows: "We acknowledge with thanks your letter of August 26th which confirms your order for 1000— 18 ft. 8 in. and 1000—14 ft. 8 in. crib roofs. We will certainly make every effort and ship according to your specifications. The stencil has been ordered and we hope we will receive it in due time. The one sample 14 ft. 8 in. roof is ready for shipment and is going out by express tomorrow. * * *."

On September 5, 1949, Claude Siebring wrote a letter to the defendant which stated: "Really we do not know what to do about steel for corncrib roofs due to the steel strike. No mill steel is available and the black market price is so high, we cannot take it. We were promised some mill steel for September but now they have delayed shipping until October and we are not sure of that. With conditions of black market priced steel from nine to ten cents per pound, we will have to have at least $58 for our 16'8" roofs and all other sizes accordingly. Our prices, however, are much less than any other manufacturing companies."

And on September 6, 1949, plaintiff-company wrote a letter to Mr. Elmer Carlson as follows: "* * * This is to confirm our telephone conversation with Mr. Huey today in which we quoted new prices on corncrib roofs. The prices to you are as follows: 14 ft. 8 in. roof @ $50 each, 18 ft. 8 in. roof @ $72 each. In view of present circumstances as outlined in our letter of September 5, we find this increase in price necessary. We trust you will realize our position and accept them as stated. Yours very truly, Siebring Mfg. Company by Claude Siebring."

Thereafter on September 10, 1949, according to the testimony of Claude Siebring he had a long-distance telephone conversation with Elmer Carlson. The record concerning it is in part as follows: "* * * A. I told Mr. Carlson, we cannot deliver roofs at the price originally quoted. We have got to

have the price as stated in our letter. And, I says, we will not load them, we can't ship them at any such a price; and Mr. Carlson told me, he says, Okay, ship the roofs, we will raise the price of our cribs. That was just what he said. Q. Do you recall whether or not any roofs were shipped then at that time? A. That day there were fifty roofs loaded—on the same day there were fifty roofs loaded on one of Mr. Carlson's trucks and they were taken to Audubon. Q. Was that before or after your conversation with Mr. Carlson? A. That was after the conversation we had, because I wouldn't load them till I knew that everything was okay."

Mr. Elmer Carlson admits that he talked to Mr. Siebring on or about September 10, 1949. He does not deny making the statement that he would raise the price he would charge for the crib roofs. There is some substantiating testimony relative to the conversation between Mr. Siebring and Mr. Carlson. A Mr. E. M. Meneough who was doing advertising work for the Carlson Hybrid Corn Company testified he was in Mr. Carlson's office on or about September 10, 1949, and at that time he overheard Mr. Carlson's statements in a telephone conversation, and heard him tell the individual with whom he was conversing to go ahead and ship the roofs. Mr. Meneough also testified that previous to the telephone conversation he overheard he had visited with Mr. Carlson and had stated to him he should not advertise his cribs because of the threatened steel strike and that Carlson said: " 'Hell no, I will raise the price on them and go ahead.' "

I. The defendant claims as error the submission to the jury by the trial court of the issue of the oral modification of the original written contract. It is contended the claimed modification was unenforceable because it was not supported by a new consideration. The defendant-company cited numerous authorities which it claims support the proposition that a written contract cannot be modified by a subsequent oral agreement, inconsistent with the written contract, unless the subsequent agreement is supported by a new consideration. Heggen v. Clover Leaf Coal and Mining Co., 217 Iowa 820, 823, 253 N.W. 140, and cases cited. However, there are cer-

tain facts which should be considered in connection with defendant's claim.

The original contract at the time of the claimed modification was executory. The parties had a legal right to rescind and abandon it by mutual agreement. Williams v. Cassidy, 237 Iowa 1042, 1050, 23 N.W.2d 423.

The question whether a rescission had been proven was rightfully for the determination of the jury. 17 C. J. S., Contracts, section 628, page 1292; Fenner v. Bolema Constr. Co., 330 Mich. 400, 47 N.W.2d 662, 664.

Inasmuch as the matter of the claimed modification was for the determination of the jury, and apparently it so decided, we do not need to comment on the cases cited by the defendant relative to a written contract being changed by a subsequent oral agreement.

II. There is no necessity for a new consideration where a former contract has been modified. This is our holding in O'Dell v. O'Dell, 238 Iowa 434, 460, 26 N.W.2d 401, 414: "Any dissolution * * * of any other executory contract may be effected by the mutual consent or agreement of the parties to do so. Lawful cause is not necessary. No new consideration is needed. The mutual release from the old contract is adequate consideration." See also Jones v. Haines, 117 Iowa 80, 82, 90 N.W. 518; Gorton v. Moeller Bros., 151 Iowa 729, 732, 130 N.W. 910; Richards. v. Hellen & Son, 153 Iowa 66, 71, 72, 133 N.W. 393; Evans v. McKanna, 89 Iowa 362, 365, 56 N.W. 527.

And in In re Estate of Lamb v. Morrow, treasurer, 140 Iowa 89, 97, 117 N.W. 1118, 1122, 18 L. R. A., N. S., 226, we commented on the matter of consideration in a modified contract as follows: "And as a general rule, the cancellation or modification of the terms and obligations of a written contract, while remaining executory, is sufficient consideration for a subsequent oral one. This is fundamental doctrine. See Page on Contracts, sections 318, 608, 1339, 1344, 1348; Jones v. Haines, 117 Iowa 80."

There are further holdings of our court to the effect that an executory contract may be canceled and a new one substituted without any new consideration for the later contract.

Strahn v. Johnson, 197 Iowa 1324, 1330, 196 N.W. 731; Blaess v. Nichols & Shepard Co., 115 Iowa 373, 376, 88 N.W. 829.

III. It is also claimed there were errors in the giving of certain instructions. In Instruction No. 1 there are set forth the details of the claimed original agreement and in Instruction No. 2 the trial court stated in part that in order for the plaintiff to recover: "* * * it must show by a preponderance or greater weight of the evidence that plaintiff and defendant entered into a mutual agreement whereby both parties agreed that the purchase price for the sale and purchase of the roofs in question was increased from $44.40 each for the 14'8" roofs to the sum of $50 each for said roofs; and from the sum of $60 each for the 18'8" roofs to the sum of $72 each for said roofs.

"The burden of proof is upon the plaintiff to establish a modification of the contract between it and the defendant by a preponderance or greater weight of the evidence, and if you find from the evidence under these instructions that before shipment of all of the roofs sold by the plaintiff and purchased by the defendant the parties entered into an oral agreement or contract for the increase of said price in the amounts aforesaid, then you should find in favor of the plaintiff on this account in a sum equal to the difference in price as above stated for the number of roofs which the evidence shows was in fact actually delivered by the plaintiff to defendant."

It is the particular claim of the defendant the trial court was in error in stating that recovery could be had if by proper proof it is shown there was an oral modification. It is claimed the necessity for a new consideration should have been therein mentioned. We have heretofore commented on the matter of consideration and our previous statements justify our conclusion there is no merit to plaintiff's complaint about this particular instruction.

IV. It is also the claim of the defendant there was further error in Instruction No. 3 wherein a statement is made to the effect that a contract may be either written or unwritten or be evidenced "* * * by both words and conduct."

This complaint necessitates our consideration of the fact

the defendant accepted performance of the modified executory contract and later paid substantial amounts on the account and for invoices showing the increased price.

In In re Estate of Newson, 206 Iowa 514, 518, 219 N.W. 305, 307, we made a statement that is applicable to the facts in the present case, as follows:

"The existence of the mutual understanding, the proposal and acceptance, may be implied from conduct and circumstances. These may be shown by circumstantial evidence, or by the admission of the party to be charged. Ball v. James, 176 Iowa 647, 655; Hankins v. Young, 174 Iowa 383, 392; Spicer v. Administrator of Estate of Spicer, 201 Iowa 99, 101; Ridler v. Ridler, 93 Iowa 347; 13 Corpus Juris 767, 768; Franklin v. Tuckerman, 68 Iowa 572.

"Acceptance may be shown by conduct or by performance communicated to the promisor. Franklin v. Tuckerman, 68 Iowa 572; Hankins v. Young, 174 Iowa 383, 392; 6 Ruling Case Law 587, 605."

And in 12 Am. Jur., Contracts, section 39, page 532, it is said: "There are various modes of acceptance which are equally conclusive upon the parties. Anything that amounts to a manifestation of a formed determination to accept, communicated or put in the proper way to be communicated to the party making the offer, would doubtless complete the contract."

Although the case of Morse v. Slocum, 192 Iowa 1080, 1094, 186 N.W. 22, 28, dealt with an equity action, yet one of the legal propositions therein commented upon is applicable to the present case: "But it is an elementary proposition that, even if the contract of May 16, 1918, should be held to have been valid when made, it was still competent for the parties thereto to abandon it, or to substitute another in its place, or, by conduct inconsistent with the continued existence of the original contract, to estop themselves from asserting any right thereunder. 3 Elliott on Contracts, Section 1865; 3 Am. & Eng. Encyc. of Law, (1st Ed.) 891; 2 Warvelle on Vendors 870; Myers v. Carnahan, 61 W. Va. 414; Hall v. Wright, 138 Ky. 71.

This rule is especially applicable where, as in this case, the alleged first contract is wholly executory."

There appears to be ample evidence that the defendant by its conduct indicated a willingness to accept the provisions of the modified contract as long as it wanted delivery of the crib roofs. It had received up to November 7, 1949, 988 of the 14 foot 8 inch crib roofs and 697 of the 18 foot 8 inch roofs. It had received invoices showing charges for the roofs at the modified price and had remitted to the plaintiff to apply on the account a total of $82,500. The defendant on November 7, 1949, wrote a letter to the plaintiff stating it was thereafter not recognizing any other price except as originally agreed upon. This letter in itself indicates the defendant had previously considered the contract modified and then sought to fall back on the original agreement. All these facts and circumstances were proper for the consideration of the jury and the court was justified in making reference in its instructions to the conduct of the defendant.

V. It is the further claim of the defendant the trial court was in error in limiting the issues presented by its counterclaim to the extent that it was permitted to recover only its expenses incurred in making repairs to certain defective roofs and in the furnishing of bolts and attachments, but, however, not in excess of the sum of $2447.36. In connection with this claim on the part of the defendant it is maintained certain warranties were made. We do not deem it necessary or advisable to make a detailed review of the evidence and the facts claimed on behalf of the defendant. It is sufficient to state there was not proper evidence presented which would justify the court in submitting issues other than those which it did.

On review of the entire record we feel justified in holding the court submitted the various questions to the jury in a proper manner, that there was no error in the limiting of the admission of certain evidence on defendant's counterclaim and consequently there should be an affirmance.—Affirmed.

All JUSTICES concur.