IOWA CHEMICAL CORPORATION, a Corporation, Appellant/Cross-Appellee,

v.

W.R. GRACE & CO., a Corporation, Appellee/Cross-Appellant.

Nos. 82–1536, 82–1588.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 11, 1983.

Decided Aug. 17, 1983.

As Amended Aug. 29, 1983. Rehearing Denied Sept. 28, 1983.

---

Dale D. Kuhlmann, Jon J. Gergen, Omaha, Neb., for appellant/cross-appellee.

Ronald W. Feilmeyer, Atlantic, Iowa, for appellee/cross-appellant.

Before HEANEY, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

McMILLIAN, Circuit Judge.

This case is before the court on cross-appeals from final judgments entered in the United States District Court for the Southern District of Iowa which awarded Iowa Chemical Corp. (Iowa Chemical) $39,000 in damages on its complaint and awarded W.R. Grace & Co. (Grace) approximately $7,900 on its counterclaims. Central to the controversy is the parties' installment sales contract whereby Iowa Chemical was to purchase 6,000 tons of fertilizer per year

from Grace between 1971 through 1975. Iowa Chemical argues for reversal that the district court erred in finding (1) that the contract terminated in December of 1973, (2) that Grace was liable only for a lower allocated share of the fertilizer to be delivered during the fertilizer shortage of 1973, (3) that Grace was entitled to lost profits caused by Iowa Chemical's failure to purchase the full 6,000 tons in 1972, and (4) that the contract's limitation of remedy clause was enforceable. Grace argues for reversal that the district court erred in failing to find that the contract was terminated in 1972 and in failing to hold Iowa Chemical liable for breaches in 1971 through 1973.[1] For the reasons discussed below, we reverse the district court's judgment in favor of Iowa Chemical as well as the district court's judgment in favor of Grace for Iowa Chemical's "breach" in 1972.

In the early 1970's, Iowa Chemical and Grace entered into a series of commercial transactions involving chemical fertilizers and equipment. Among these transactions was an installment sales contract for fertilizer. Under this contract Iowa Chemical was to purchase 6,000 tons of fertilizer from Grace per year starting in 1971. The contract contained a price protection addendum that permitted Iowa Chemical to buy fertilizer from another source if Iowa Chemical could do so at a price lower than Grace's list price. In order to take advantage of the price protection addendum, Iowa Chemical was required to submit written evidence of the lower price to Grace and give Grace an opportunity to meet the lower price. If Grace failed to meet the lower price, Iowa Chemical was free to buy from the bargain supplier and could deduct the quantity of bargain fertilizer from the 6,000 tons to be purchased from Grace for that year.

During 1971, Iowa Chemical purchased only 2,373 tons of fertilizer from Grace while purchasing nearly 9,000 tons from other sources at prices lower than Grace's. Iowa Chemical never provided Grace with written evidence in 1971 of a lower price as required by the contract; however, nor did Grace demand any written evidence. During 1972, Iowa Chemical purchased no fertilizer from Grace, while purchasing 5,254.5 tons from other sources at prices below Grace's list prices. Again, no written evidence of lower prices was submitted or requested. During the winter, spring and summer of 1973, Iowa Chemical purchased no fertilizer from any source. Then, in the fall of 1973, various market forces coalesced to spur a huge increase in the demand for fertilizer and a corresponding increase in the price of fertilizer. Fertilizer manufacturers, unable to keep pace with their customers' orders, instituted allocation programs based on the customer's present needs and the quantity of fertilizer the customer had purchased in previous years. Grace started just such an allocation plan in September of 1973.

As a result of increasing retail prices, Iowa Chemical attempted to buy fertilizer from Grace in the fall of 1973. Grace refused to sell to Iowa Chemical. On February 28, 1974, Iowa Chemical asked Grace to sell its fertilizer according to the terms of the contract. At that time Grace told Iowa Chemical that it had made no 1974 allocation for Iowa Chemical because Iowa Chemical did not buy any fertilizer from Grace in 1972 or 1973. Thereafter, Iowa Chemical made a formal demand for 6,000 tons of fertilizer for 1973 and 6,000 tons for 1974. Grace responded on April 2, 1974, that because Iowa Chemical had previously breached the contract in 1971, 1972 and 1973, Grace was electing to terminate the contract as of December 31, 1973. Iowa Chemical subsequently sued Grace for lost profits that Iowa Chemical would have made on the resale of 6,000 tons of fertilizer in each

---

1. Grace originally had also argued that the district court's award of 10% pre-judgment interest was an improper retrospective application of Iowa Code Ann. § 535.3 (West Supp.1982) which was enacted in 1980. *See* 1980 Iowa Acts ch. 1170, §§ 1, 2. In light of *Janda v.* *Iowa Indus. Hydraulics, Inc.,* 326 N.W.2d 339, 343–45 (Iowa 1982), Grace withdrew this point of error at oral argument. We commend Grace's counsel for bringing this case to our attention.

of the years 1973 through 1975, alleging that Grace had repudiated their contract. Grace counterclaimed for damages incurred due to Iowa Chemical's alleged breach of several different contracts, including the installment sales contract.

The parties tried the issue of liability before the district court. The damages issues were tried before a magistrate. The district court concluded that it was proper for Grace to cancel the installment sales contract as of December 31, 1973. *Iowa Chemical Corp. v. W.R. Grace & Co.*, No. 74–30–W (S.D.Iowa Nov. 6, 1979). The court offered two rationales for this ruling. First, the court drew an analogy between breaches of several installments of an installment sales contract which substantially impair the value of the whole contract and Iowa Chemical's breaches of its other contracts with Grace apart from the fertilizer sales contract. Slip op. at 20; *see* Iowa Code Ann. § 554.2612 (West 1967).[2] The court reasoned that the cumulative effect of Iowa Chemical's breaches in the other contracts, the fertilizer shortage, and "the ongoing problems with the transactions between the parties justified Grace in cancelling the contract as of December 31, 1973." Slip op. at 20. The court's second rationale was that both parties had "ignored the contract from the time of its inception in January of 1971 until the fall of 1973." *Id.* Thus, the parties had mutually abandoned the contract as of December 1973 and neither party was bound by its terms thereafter.

The court also determined the respective rights of the parties under the contract prior to the contract's termination in December of 1973. The court held that Iowa Chemical had failed to pay interest on arrearages in its payments to Grace for fertilizer purchased from Grace in 1971. *Id.* at 10. The court also held that in 1972 Iowa Chemical had breached the sales contract by failing to buy the full 6,000 tons of fertilizer from Grace or from other sources with

prices below Grace's. The court, therefore, awarded Grace the lost profits on the shortfall. *Id.* at 12. As to Grace, the court ruled that Grace had breached the sales contract by refusing to sell fertilizer to Iowa Chemical in the fall of 1973. *Id.* at 21. The court, therefore, awarded Iowa Chemical its lost profits on 600 tons of fertilizer, which was the amount of fertilizer Iowa Chemical would have received under Grace's allocation program. *Id.* at 22. Both parties appealed.

■ There can be no breach of contract without the existence of an unexcused absolute duty to perform under an enforceable contract. Our initial inquiry therefore must be to ascertain whether such a contract existed between the parties. Under Iowa law parties to a contract may impliedly rescind their contract through abandonment. *See Siebring Manufacturing Co. v. Carlson Hybrid Corn Co.*, 246 Iowa 923, 70 N.W.2d 149, 153 (1955). No formal agreement of the parties is required to abandon a contract. Abandonment may be inferred from the parties' conduct and the circumstances surrounding the parties' conduct. *O'Dell v. O'Dell*, 238 Iowa 434, 26 N.W.2d 401, 414 (1947). All that is required is a mutual intent to abandon "accompanied by acts indicating that purpose and intent" or non-use of a contract right "coupled with other circumstances and conditions which expressly show an intention to abandon" if acted upon by the other interested party. *Ray Coal Mining Co. v. Ross*, 169 Iowa 210, 151 N.W. 63, 65 (1915). It is a question of fact whether a contract has been abandoned. *Severson v. Elberon Elevator, Inc.*, 250 N.W.2d 417, 421–22 (Iowa 1977). We will not reverse a factual conclusion of the district court unless it is clearly erroneous.

■ As the district court pointed out, neither Grace nor Iowa Chemical actively exercised any of their respective rights nor performed any of their respective obligations *under the contract.* While it is true that Iowa Chemical purchased fertilizer

---

**2.** The contract stipulates that Maryland law is to govern the terms of the contractual relationship between Grace and Iowa Chemical. How- ever, the parties had agreed to a modification of the contract so that Iowa law would govern.

from Grace in 1971, Iowa Chemical purchased the fertilizer at list prices just as any other Grace customer that had no contract would have done. When purchasing fertilizer from other sources, Iowa Chemical never supplied Grace with written evidence of the lower prices. Iowa Chemical did not buy *any* fertilizer from Grace after the fall of 1971. Grace, in turn, never requested information about lower prices, never sought to have Iowa Chemical purchase the full 6,000 tons of fertilizer under the contract, and never demanded adequate assurances of continued performance after Iowa Chemical failed to purchase fertilizer under the contract. In short, both parties simply ignored the contract until dramatic increases in price and demand occurred in late 1973. From this inaction by both parties, and under these circumstances, Grace was justified in acting upon the non-use of contractual rights by both parties to consider the contract at an end. The district court, however, concluded that the parties abandoned the contract as of December 31, 1973. This latter conclusion is clearly erroneous. During November and December of 1973, Iowa Chemical was earnestly trying to revive and exercise its rights under the contract. If the parties did abandon their contract under Iowa law, and we conclude that they did, they abandoned it in 1971, or at the latest, early 1972.

Iowa Chemical argues that there could have been no abandonment because the parties were in continuous contact during 1971 and 1972 and that, in general, the actions of the parties were equally consistent with the continued existence of the contract. We have no quarrel with this argument. This, however, is a diversity case and we must be guided by Iowa law as enunciated by the highest court in that state. The Iowa Supreme Court has made it clear that "[w]hen the evidence [of abandonment] is susceptible to differing inferences, the issue whether the claim has been proven is for the trier of fact." *Severson v. Elberon Elevator, Inc.*, 250 N.W.2d at 422. Although we now hold that it was clear error to find that the contract was abandoned in December 1973, the district court's underlying factual con-

clusion that the contract had been abandoned is not clearly erroneous.

Accordingly, we reverse the district court's judgments against Grace and against Iowa Chemical awarding each party damages for breach of the installment sales contract. We affirm the district court's judgment of $2,384.77 against Iowa Chemical for unpaid interest on delayed payments for fertilizer purchased by Iowa Chemical in 1971. Interest on this judgment will be in accordance with Iowa Code Ann. § 535.3 (West Supp.1982). *See* note 1 *supra*. Each party is to bear its own costs.