## PAMELA M. FRASER v. ESTATE OF ALEXANDER D. FRASER.

### Contract—Evidence to vary terms—Equities.

Where a claim against an estate is based on a written agreement between decedent and claimant, the estate is not entitled to any deduction from it on account of items not specified in the agreement, on the ground that such deduction would be manifestly just and that it must be supposed that the parties understood the contract to provide for it.

A man agreed with his daughter-in-law that certain property should be sold and that she should have what was left of the proceeds after certain deductions were made. When the property was sold, he directed what should be done with the proceeds and she received what he gave her. She afterwards brought a claim against his estate based on the agreement. *Held* that it was not to be inferred from her receipt of the money paid her that she had agreed to take so much in satisfaction of her claim, or that she supposed she was accounting with her father-in-law as strangers would account with each other.

Where a man had a written agreement with his daughter-in-law whereby she was to receive the proceeds of the sale of certain property after specified charges against it had been paid him, the fact that he had afterwards, and before sale, sent her a statement of an account between themselves containing items not covered by the agreement, will not bind her to the deduction of so much from the amount due her under it, in the absence of evidence that she had examined the account or consented to such deduction.

An equitable defense to a claim for money had and received must be one known to the law and recognized on principles which courts of equity administer.

An equity against the words of an express contract, where no want of capacity, illegality, fraud, or mistake in making it, is shown, cannot be recognized.

Where a written agreement is made in express terms for the satisfaction of certain claims held by one party against the other, a letter previously written by the former to the latter and containing a statement of the amount paid out by the former for the benefit of the latter, is not admissible to vary the express terms of the agreement.

Error to Wayne.   Submitted Oct. 29.   Decided Nov. 29.

APPEAL from an allowance by commmissioners on an estate.   The claimant recovered on appeal, and the special administrators assign error.

*Ashley Pond* for the claimant.

*William Jennison* for the estate.   When a mistake of law is made in the construction of a contract, one who has a knowledge of the facts cannot recover in reliance on the error, 2 Greenl. Ev., § 123; *Detroit v. Martin*, 34 Mich., 174; *Flower v. Lance*, 59 N. Y., 610; *Clarke v. Dutcher*, 9 Cow., 674; *Cook v. Boston*, 9 Allen, 393; *Martin v. Hamlin*, 18 Mich., 364; and if parties contract under a mutual error of fact, they are restored, on discovering it, to their original rights, *Mowatt v. Wright*, 1 Wend., 355; *Norton v. Marden*, 15 Me., 45; but the mistake must have been mutual, *U.· N. Bank v. Sixth N. Bank*, 43 N. Y., 454; *Lawrence v. Amer. N. Bank*, 54 N. Y., 432; where money has been received in good faith in satisfaction of an equitable claim, or where it is due in honor and conscience, it cannot be recovered back by the party who paid it even though he had a legal right to it, *Eddy v. Smith*, 13 Wend., 490; *Mayor v. Erben*, 10 Bosw., 189; *Foster v. Kirby*, 31 Mo., 498; the defendant may go into every equitable defense, under the general issue (*Moses v. MacFerlan*, 2 Burr., 1010), and may

introduce parol testimony to explain or vary the contract, *Chambers v. Livermore*, 15 Mich., 389.

COOLEY, J. The claimant presented a demand against the estate of Alexander D. Fraser, who was her father-in-law, the basis of which was the following agreement in writing between them:

"Memorandum of agreement made and entered into by and between Alexander D. Fraser, of the city of Detroit, party of the first part, and Pamela M. Fraser of the same place, party of the second part, on the seventh day of December, A. D. 1872.

Whereas, the late Alexander J. Fraser heretofore in his life-time duly made, executed and delivered to said party of the first part a certain deed of conveyance of lot 'B' on Fraser's plat of a part of the Chene farm, lying on the south side of Jefferson avenue in said city of Detroit, being the same premises upon which he then lived and which are described as follows:

On the north by Jefferson avenue, and on the south by Franklin street, and on the east by the boundary line between said lot and that of Henry N. Walker, and on the west by the boundary line of said lot and the property of said party of the first part, which lot is one hundred and forty (140) feet front; that said deed was duly acknowledged and recorded in the office of the register of deeds for Wayne county, and to which reference is here made for greater certainty.

And whereas, further, the party of the first part has, since the date of said deed, paid, laid out and expended various sums of money for taxes assessed on said premises for city, state and county purposes, special assessments for pavements and for drains, and also for repairs upon said premises up to the present time as will more fully appear by the receipts, documents and vouchers therefor, the greater part of the money so applied being money belonging to Mary Davidson, and the residue from the money of the party of the first part.

And whereas, said party of the first part is desirous and willing that the said party of the second part shall now be entitled to and receive whatever sum or sums of money that shall be derived from the sale of said premises on the following terms:

Therefore it is hereby mutually agreed by and between the said parties respectively, that the said premises shall be sold in such manner as the said Pamela shall desire; that out of the first proceeds of the sale the mortgages affecting said premises shall be paid and discharged;

that then whatever sum or sums of money may have been paid or laid out by the said Alexander D. for taxes, repairs and assessments as aforesaid, and insurance on said premises, with such as he may hereafter pay before such sale with interest thereon at the rate of seven (7) per cent per annum, from the date of such advances respectively, shall be paid and refunded to him; that if any other liens legally affect said premises, the same shall also be discharged in like manner; that after such deductions are made, the whole of the residue of the money to be derived from the sale of said premises, shall be the absolute property of said Pamela, her heirs and assigns, for her own use and purposes; that upon such sale being made (on these provisions being carried out), both the parties hereto will duly make and execute the requisite deeds for the premises. And in order to afford time for making such sale it is the desire of the said Pamela that the said Alexander D. shall pay the State and county taxes that are now due and payable upon the same, and also pay the installment of interest on said mortgages which shall be due upon the first day of January next.

In witness whereof the parties to these presents have hereunto respectively set their hands and seals on the day and year aforesaid.

A. D. FRASER,        [L. S.]<br>
PAMELA M. FRASER.    [L. S.]

Signed, sealed and delivered in presence of
    MARY HERTER,
    JULIAN WILLIAMS.

Said agreement was duly acknowledged Dec. 7, 1872."

The agreement was not disputed, but it was claimed on the part of the estate that it was fully satisfied by Mr. Fraser in his life-time. It appeared in evidence that A. J. Fraser, the claimant's husband, on March 1, 1862, executed two mortgages on the premises described in the agreement, to Sullivan Moulton, to secure the payment of $7500 in five years from date, with ten per centum annual interest, and that Mr. A. D. Fraser had paid interest on these mortgages from time to time previous to the execution of the agreement. Also, that the premises were levied upon by virtue of an execution against A. J. Fraser, in favor of one Biddle, which Mr. A. D. Fraser afterwards agreed to pay $1000 to discharge. It was further shown that on March 29, 1875, A. D. Fra-

ser sold the premises to one Grummond for $32,500, which was paid as follows: The Moulton mortgage, $8062; taxes, $284; Biddle levy, $1000; mortgage to A. D. Fraser, $16,000; mortgage and cash to claimant, $6202. The representatives of the estate insist that what was at this time paid to the claimant was all she was entitled to, and this seems to have been conceded, provided Mr. Fraser was entitled to charge, as against her, the interest he had paid on the encumbrances previous to the making of the agreement. In support of the right to this it was urged—

*First.* That as it was manifestly right and just that Mr. Fraser should be allowed for this interest, it must be supposed that the parties understood their contract to so provide.

*Second.* That from what took place at the time of the sale to Mrs. Grummond, when the proceeds of the sale were distributed between the parties, we must infer a settlement on that understanding.

*Third.* What was called an equitable defense was sought to be introduced by showing the previous kindness of Mr. Fraser to the claimant, and his consequent embarrassment; and as bearing upon this a letter given in the margin* was offered in evidence, but rejected by the court as incompetent.

---

*DETROIT, 30 July, '72.

MILLIE: I have delayed as long as possible to make this communication to you, but now necessity compels me to make it, however unpleasant it may be to either of us.  I am no longer able to keep up two houses, and you must make some arrangement by which I shall be relieved from the fearful drain upon my almost exhausted means.  I have more than once told you that they were very limited for obvious reasons.  I have been out of practice for the last sixteen years; I had no income but what was derived from some small investments and these are principally paid up, and have been expended for the most part in paying semi-annual burdens on the property on which you live.  For instance glance at the amount of money laid out by me since the 17th of April, '71, the day of your husband's death (a little over 15 months), for taxes, interest on the mortgages, and other charges affecting the real estate, and which amounts to _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ $2,089 32
To which add the money paid to you for servants' wages, fuel, gas, etc., a statement of which you may examine and is at your service, for same period _ _ _ _ _ _ _ _ _ _ _ 748 13

Total _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ $2,837 45

The first position is obviously untenable. The written agreement points out with particularity and exactness what Mr. Fraser shall deduct when the premises are sold, and interest previously paid on encumbrances is not among the items.

To support the second, certain evidence of circumstances attending the Grummond sale and the execution of the papers was given. That of William A. Moore, Esq., was most explicit in giving details, but the most that was shown was that Mr. Fraser directed what should be done with the proceeds of the sale, and that the claimant took what was handed over to her. No evidence whatever was given which showed, or had any tendency to show, that she agreed to take what she got in satisfaction of her claims. It might be inferred that she supposed her father-in-law was giving her all she was entitled to, but not that she was accounting with him as strangers or business dealers would account with each other.

—and this does not contain a dollar for furnishing your house with provisions, etc., during the time stated, nor does it embrace any money I have paid for Carrie. You must also remember that I have been subjected to the payment of the same burden annually for about 11 years, besides being subjected to other expenses. It is impossible for me to continue this state of things longer. My reduced means will not admit of it. In addition to all this I have an assessment of $1,400 to pay this fall for the paving of Chene street. It is my necessity that compelled me to make an effort to sell my property on the avenue. I have paid up the interest on the mortgages and the city taxes to first July inst. Under these circumstances it is for yourself to determine what course you will pursue. If a sale cannot be made this summer or fall, you had better procure a tenant with whom you can board. Should you not succeed in this I shall pay Carrie's board in any place I shall approve of. I hope by the first of September you will consummate an arrangement.

It is hardly necessary for me to tell you, that I have for years been compelled to economize my means in every way to enable me to assist your family. I have avoided traveling expenses by remaining at home, and denied myself the luxuries of life to a very great extent.

Yours,

A. D. FRASER.

*Mrs. A. J. Fraser.*

P. S.—You must also keep in mind that embraced in the moneys I have laid out as stated in the within (anterior to your husband's death), was the $12,597 (of which you have an account), the greatest part of which belonged to my sister and which was laid out by me in paying for the pavement of Jefferson avenue, and the taxes and other charges on the real estate and which is still due and the interest of it.  F.

It is urged that in view of these facts it is probable that the parties must have met and come to an understanding respecting what each was entitled to previous to that day, and the jury might have so found if the court had not taken the case away from them, as hereafter stated. The jury indeed might have guessed that such was the fact, but the case was bare of any evidence to that effect, and the business of the jury is not to guess, but to draw conclusions of fact from evidence.

A statement of account sent by Mr. Fraser to the claimant was put in evidence, the heading of which was as follows: "Moneys advanced by A. D. Fraser for himself and Mary Davidson on A. J. Fraser's residence on Jefferson avenue, Detroit, and constituting a lien and charge thereon, with interest thereon at seven per cent per annum up to 1st January, '74, in the payment of the public and private burdens on the same, and to preserve the property, etc." In this statement were included payments of interest on the two mortgages, beginning with November 19, 1863. There was evidence that the claimant had this statement previous to the sale, but none that she had examined it, or that it had ever been the subject of discussion or conversation between herself and Mr. Fraser. If, then, it could be evidence that Mr. Fraser understood the payments made by him for interest were to be refunded, it could not bind the claimant, in the absence of any consent to this view.

The idea of a right to make an equitable defense, based upon circumstances appearing in the case, seems to rest upon this: that, as this claim is one for money had and received, any equity which shows that the claimant in justice is not entitled to it, constitutes a good defense. *Moore v. Mandlebaum*, 8 Mich., 434. This is true; but the equity must be one known to the law, and one that can be recognized on the principles which courts of equity administer. An equity against the words of an express contract, where neither want of capacity, illegality, fraud,

nor mistake is shown in the making of it, can never be recognized.

Now, it is a fair deduction from the evidence in the case, and from his letter, that Mr. A. D. Fraser had been very kind to his daughter-in-law, and had expended considerable sums in the support of herself, her husband and their child. But it would be a most violent assumption if we were to conclude from this that he must have intended to charge her with all payments of interest made on the Moulton mortgages, when the written contract fails to express that understanding. It would be much more consistent with reason to infer that he intended those payments as a part of his charitable kindness, and for that reason failed to speak of them in his agreement. But inferences are idle here: the contract entered into by competent parties, without fraud or mistake, is not to be affected, changed or qualified by any such considerations as have been suggested. It must stand as written.

We fail to find in the case any evidence which could justify submitting to the jury any question of whether the understanding between the parties was different from what the written contract showed, or of whether the claimant had not, by settlement or otherwise, deprived herself of the right to demand what apparently is due her by the terms of the contract. The letter which the court rejected was inadmissible. The circuit court directed the jury to return a verdict for the claimant for what apparently was due her under the contract, and this was right. The judgment will therefore be affirmed with costs.

The other Justices concurred.