### In re BLODGETT'S ESTATE.

1. WILLS—CONSTRUCTION—INTENT OF TESTATOR.
   It is a cardinal canon, a predominating rule in the construction of wills, that the intent of the testator must govern, unless it contravenes fixed rules of law.

2. SAME.

Where the intent of the testator is expressed in clear and unambiguous language there is no occasion for the application of technical rules of construction.

3. SAME.

Technical rules of construction should be applied only to aid in arriving at the intent of the testator. .

4. SAME—AMBIGUITY.

If the intention of the testator is obscure, and the language ambiguous, resort must be had to the well understood rules applicable to the construction of wills for the purpose of arriving at the ultimate object of the inquiry, viz., the intention of the testator and the solution of the question of what was his will.

5. SAME—CONSTRUCTION—VESTED ESTATES.

While the law favors vested estates it does not preclude the creation of a vested estate subject to be divested upon the happening of a future event.

6. SAME—BENEFICIARIES—RIGHT OF TESTATOR.

While the law provides a manner of distribution and descent of property, this does not preclude, except as to the wife, the willing of the entire property to strangers.

7. JOINT TENANCIES—WILLS.

While the law does not favor joint tenancies it nevertheless permits their creation.

8. WILLS—REMAINDERS—TIME OF VESTING.

Where a testator by will gives his wife a life estate in land and then provides that after her death it shall go to his children, naming them, "or the survivors of them living at that time," the remainder, not the enjoyment of it, goes to the survivors of his children living at the time of the death of his wife, as otherwise the words "at that time" would be meaningless.

9. SAME—CONSTRUCTION—GIVING EFFECT TO INSTRUMENT AS A WHOLE.

Where there are two constructions to be given a clause in a will, one giving the words force as modifying the preceding words, and the other construction rendering them meaningless and without effect, the construction must be indulged in which gives force and vitality to all parts and expressions in the will.

10. SAME.

   Will construed as a whole as meaning that testator in-
      tended that pecuniary legacies should be paid at all events,
      and that the children surviving his wife's death should
      take the residue.[1]

Error to Kent; Perkins, J. Submitted June 14, 1917. (Docket No. 44.) Decided July 26, 1917.

Birt E. Blodgett, administrator *de bonis non* of the estate of Chauncey Blodgett, deceased, presented his final account and asked for an order of distribution. The order was granted and Roy Blodgett and others appealed to the circuit court. Judgment reversing the order of the probate court. Birt E. Blodgett and another bring error. Reversed, and remanded with instructions.

*Maynard, Freeland & Munshaw*, for appellants.

*Taggart & Kingston* and *Corwin & Norcross*, for appellees.

FELLOWS, J. Chauncey Blodgett, a resident of the township of Paris, in Kent county, died August 27, 1889. His will was duly admitted to probate. Omitting signature and attestation, it was as follows:

"Know all men by these presents, that I, Chancy Blodgett of the town of Paris, county of Kent and State of Michigan, being of sound and deposing mind and memory and considering the uncertainty of this life, do make, declare and publish this as my last will and testament, as follows:

"*First.* I direct that all my just debts including funeral expences and expences of administration be paid.

"*Second.* I give and bequeath to my wife Cornelia E. Blodgett, to have and to hold and the use of all my personal property, rights, and credits of which I shal

---

[1]Generally on the question of law governing construction of wills, see note in 2 L. R. A. (N. S.) 443.

die possessed or to which I may be entitled at the time of my death, and I do hereby give and grant unto her full right, power and authority to use and controlle the same and to sell and dispose of the same as fully as if the same were her property absolutely, and to employ and make use of the procedes thereof in any way that in her judgment may seam proper, and after her decease I give and bequeath the residue of all my personial property to my five children, viz. To Eugene William, Birt, Fred, and Jennie, or to such of them as shal be living at the time of my death in case I shal survive my wife, or at the time of my wife's death, in case she should survive me, to be divided between said five children or the survivors of them eaqually, after giving Birt one hundred dollars, Fred five hundred dollars, and Jennie two hundred and fifty dollars, and Jennie is to have all of the goods and Furniture and every thing in the house, after that they are to share and share alike.

"*Third.* I give and devise to my wife Cornelia E. Blodgett, the use of all my real estate to manage the same as in her judgment seams proper, and to receive the rents, issues and profits of the same for her own use and benifit, and after her death I give and devise all my real property which shal not have been disposed of for the payment of debts and subject to the dower rights of my said wife to my said five children, viz. Eugene William, Birt, Fred and Jennie or the survivors of them living at that time to be divided between them eaquely after giving Birt one hunderd dollars Fred five hunderd and Jennie two hunderd and fifty dollars, and all of the goods and furniture that is in the house as above specifide in the second clause of this will then eaquely share and share alike.

"*Fourth.* I do hereby authorize and empower my said wife to sell and convey any portion or all of my real estate if it shal be necessary to do so to pay debts that may exist against my estate.

"*Fifth.* In case my said wife shall not be living at the time of my death then in that event I give devise and bequeath all my property both and personal to my said five children, viz. Eugene William Birt Fred and Jennie or to such of said five children as shal be living at the time of my death, to be divided among them

eaquely after giving Birt one hunderd dollars and Fred five hunderd dollars Jennie two hunderd and fifty dollars and all of the goods and Furniture in the house as above specifide in the second and third clause in the will, then share and share alike to have and to hold the same unto them and to their heirs forever.

"*Sixth.* I do hereby appoint my wife, Cornelia E. Blodgett to be executrix of this my last Will and Testament.

"Lastly. I do hereby revoke all former wills, declareing this writing alone to be my last will and the whole of it."

Mr. Blodgett was survived by his widow, Cornelia E., and his five children, Eugene, William, Birt, Fred, and Jennie. He left no debts. September 3, 1915, the widow, Cornelia E., died. She had during her lifetime used and disposed of the personal property, except a small amount of household goods, leaving the real estate consisting of an 80-acre farm worth $5,800. The only children living at the time of her death were William and Birt. Eugene had died leaving four children, but during his lifetime, by way of mortgage, had assigned any interest he might have in his father's estate to George W. Roberts. Fred had died leaving no children, and not having been married. Jennie had married, leaving at her death a daughter, Ora Buxton, who is still living.

This case involves the construction of the third clause of the will, and brings up for review a judgment of the circuit court for the county of Kent reversing an order of distribution entered by the probate court for that county. By the order of the probate court the farm was equally divided between William and Birt, and no interest or claim of any other parties was allowed. The circuit court awarded the special legacy of $100 to Birt, the one to Jennie of $250, and household goods to Ora Buxton her daughter, and, subject to the payment of these special leg-

acies, awarded the farm one-fourth to each Birt and William Blodgett and Ora Buxton and one fourth to the children of Eugene. Birt and William bring the case here.

It is insisted by the appellees in support of the judgment that the will speaks as of the death of the testator; that property then vests unless there is a clear and unambiguous direction to the contrary; that the law favors vested estates; that the law favors that construction conformable to the rules of inheritance; that construction disinheriting direct descendants is not favored; that the law does not favor joint estates or survivorship; that meaning must be given to all parts of the will; that construction working intestacy should be avoided; and that the adverbs of time should be construed to relate to the time of enjoyment, rather than the time of vesting.

On the part of the appellants it is insisted that the language of the clause in controversy is clear and unambiguous; that joint tenancies with their right of survivorship are permitted; that if the estate vested at the death of the testator it was subject to be divested by the happening of a future contingency, viz. the death of the devisee; that, taking the will in its entirety, it shows that the testator contemplated and provided for two periods depending on different contingencies when the estate would vest, one upon the contingency of the death of his wife prior to his death, when the children surviving his death should take the property, the other upon the contingency of his death preceding that of his wife, in which event the children surviving at her death should take the property; that, whether we consider clause 3 alone, or in connection with the context, it shows a clear intent on the part of the testator to give this property to the children surviving at the death of his wife, and that such intent should govern and control.

It is a cardinal canon, a predominating rule in the construction of wills, that the intent of the testator must govern, unless it contravenes fixed rules of law. If the intent of the testator is expressed in clear and unambiguous language, there is no occasion for the application of technical rules of construction. Such rules should be applied, and applied only, to aid in arriving at that intent. The intent of the testator was fittingly styled by Lord Coke "the polar star to guide judges in their determination." Chancellor Kent said:

"The intention of the testator is the first and great object of inquiry; and to this object technical rules are, to a certain extent, made subservient." 4 Kent's Commentaries (14th Ed.), p. 534.

Chief Justice Marshall, in the case of *Smith* v. *Bell*, 6 Pet. (U. S.) 68, said:

"The first and great rule in the exposition of wills, to which all other rules must bend, is, that the intention of the testator expressed in his will shall prevail, provided it is consistent with the rules of law."

If the intent of the testator is obscure, the language ambiguous, resort must be had to the well-understood rules applicable to the construction of wills for the purpose of arriving at the ultimate object of the inquiry, viz., the intention of the testator, the solution of the question: What was his *will?*

It is true, as contended by appellee, that the law favors vested estates, but it does not preclude the creation of vested estates subject to be divested upon the happening of a future event. It is true that the law provides a manner of distribution and descent of property, but this does not preclude, except as to the wife, the willing of the entire property to strangers. It is true that the law does not favor joint tenancies, but it nevertheless permits their creation. 4 How. Stat. (2d Ed.) § 10666 (3 Comp. Laws 1915, § 11562).

To restate what we have already said, rules of con-

struction of wills are to be used to aid in determining the intent of the testator, but not to obscure it, and must yield where by clear and unambiguous language that intent appears and has been expressed beyond question and beyond cavil.

Let us examine the will here involved, first taking up the clause in controversy, and then considering the context, the will as a whole, from its four corners. By the third clause the testator gave to his wife a life estate of the land in question. He then provided that "after her death" it should go to his children, naming them, "or the survivors of them *living at that time.*" Is the intent of the testator clear from this language? If so, our inquiry, so far as this clause standing alone is concerned, is at an end. We think it is. Clearly the remainder, not the enjoyment of it, went to the survivors of his children living at that time. The words "at that time" referred to, and only to, the time of the wife's death. Any other construction would do violence to the language employed; any other construction would require us to read out of this clause the words "or the survivors of them living at that time." This we cannot do. The will as written is the will before us. We cannot subtract from or add to its language; all parts must be considered by us and given effect. Otherwise we substitute our will for that of the testator. We cannot, within the compass of this opinion, undertake to discuss the cases cited by counsel on both sides. The authorities are numerous, and not in harmony. The briefs are exhaustive and able. One case, however, the one upon which counsel for the appellees place great stress, and which it is insisted is controlling, should be noted in this connection. We refer to the case of *Rood* v. *Hovey,* 50 Mich. 395 (15 N. W. 525). In this case the wife was given the life estate and the remainder "to my children now living, or who may be at the time of her decease or marriage."

It was held that the language "or who may be at the time of her decease" might very well apply to posthumous children, but did not indicate an intent to qualify the former language as to living children. There the language was held to have a meaning, a definite purpose, not a qualifying of the former language, but a provision for children born after testator's death. Here the words used, unless qualifying the former language, are meaningless; serve no purpose, and might as well have been omitted.

If there are two constructions to be given, one giving them force as modifying and limiting the preceding words, and the other construction rendering them meaningless and without effect, the construction must be indulged in which gives force and vitality to all parts and all expressions in the will. Giving force and effect to all of the language found in this clause, Does the language used import that the survivorship mentioned in this clause refers to the death of the testator, or that of the wife? Clearly it had reference to those children who survived the wife, not to those children who survived the testator.

Let us now consider the will in its entirety, because to arrive at the intent of the testator we must have regard for all provisions of the will and all language used. In clauses 2, 3, and 5 we find the same provisions for pecuniary legacies to three of his children Birt, Fred, and Jennie. There is no contingency attached with reference to any of these children. The language used is unequivocal, and the legacies are absolute and depend upon no condition. In clause 2 of his will testator disposed of his personal property. He gave to his wife full right, power, and authority to use and control it. He provided for the disposal of the residue, however, to his children, naming them, or to such of them as should be living at his death, if he survived his wife, or at his wife's death, if she sur-

vived him. In clause 5 he provides for the contingency of his wife's death before his, and in that event gives his property to the children who survived him. Taking into consideration the entire instrument, it is clear that testator had in his mind when he executed this will two contingencies, either of which was liable to happen, and one of which would surely occur, and made provision therefor. These contingencies were: *First*, that his wife should die first, in which event the property should go to those children who should survive him; *second*, that his wife should outlive him in which event the property should go to those children who survived her. The testator having in mind two contingencies, either of which might happen, provided two periods at which survivorship should be determined, one of these periods was at his death, contingent upon his outliving his wife, the other at her death, contingent upon her outliving him. When the contingencies happened and one of these periods arrived, the children surviving at that time, and only those surviving at that time, became entitled to the residue of the estate.

Whether we consider the third clause of the will alone, or in connection with the remaining provisions of the will, we are irresistibly driven to the conclusion that it was clearly the intent of the testator that the pecuniary legacies should be paid in any and all events, and that the children surviving his wife's death should take the residue.

It follows that the judgment of the circuit court must be, and the same hereby is, reversed. The case will be remanded, with instructions to enter a judgment or order awarding the real estate of which the testator died seised to Birt Blodgett and William Blodgett equally, share and share alike, subject to the pecuniary legacies, which shall be made a lien upon the land. The appellant will recover costs of this court.

The appellees, having succeeded in modifying the order of the probate court, will recover costs of the circuit court.

KUHN, C. J., and STONE, OSTRANDER, MOORE, STEERE, and BROOKE, JJ., concurred. BIRD, J., took no part in the decision.