BOGGS *v.* TOBIN.

1. CONTRACTS—RIGHTS OF PARTIES.

Rights of parties to unambigious written contract are dependent upon the construction which may fairly be placed upon its provisions.

2. COMPROMISE AND SETTLEMENT—FEDERAL ESTATE TAX REFUND—EQUITY.

Under agreement compromising certain judicial proceedings involving the estates of a mother and son to whom she had made a transfer of a large share of her stocks and bonds and which agreement provided for contingency of redetermination of Federal estate tax, son's estate *held*, legally and equitably entitled to entire sum refunded by Federal government to mother's estate representing amount paid under protest as estate tax upon such transfer.

3. APPEAL AND ERROR—QUESTIONS REVIEWABLE—INTERVENERS.

In suit between parties to compromise agreement settling judicial proceedings between various parties interested in estates of mother and son to whom she had transferred valuable stocks and bonds, questions raised by intervening contingent beneficiaries under son's will but not passed upon by trial court *held*, not reviewable.

POTTER, C. J., and FEAD and BUSHNELL, JJ., dissenting in part.

Appeal from Wayne; Webster (Clyde I.), J. Submitted January 22, 1935. (Docket No. 72, Calendar No. 38,131.) Decided September 9, 1935. Rehearing denied October 30, 1935.

Bill by Allan D. Boggs, George A. Boggs and Charles F. Delbridge, guardian of Mildred Boggs and Norman T. Boggs, against Benjamin F. Tobin, Jr., Marjorie Tobin MacDonald, Laura M. Tobin, individually and as coexecutrix of the will of Ben-

jamin F. Tobin, deceased, Cornelia J. Hartwell and
Security Trust Company, executor and trustee of
the will of Cornelia O. Curtis, deceased, and coex-
ecutor and trustee of the will of Benjamin F. Tobin,
deceased, and trustee under certain settlement
agreement, for construction of settlement agreement
and other relief. Clay C. MacDonald, as next friend
to Clay C. MacDonald, Jr., Virginia MacDonald,
Patricia MacDonald and James MacDonald, minors,
intervened. From decree for plaintiffs and order
denying rehearing, defendants (except defendant
Hartwell) and interveners appeal. Reversed.

*Charles F. Delbridge* and *W. Leo Cahalan* (*Frank
W. Atkinson* and *Francis W. McCauley,* of counsel),
for plaintiffs.

*Monaghan, Crowley, Reilley & Kellogg,* for de-
fendants MacDonald and Security Trust Company.

*Thomas F. Chawke,* for defendants Tobin.

*Fred A. Behr,* for interveners.

NELSON SHARPE, J. As stated by Mr. Justice
BUSHNELL in his opinion, "both counsel take the
position that the written contract is not ambiguous."
The rights of the parties thereto are therefore de-
pendent upon the construction which may fairly be
placed upon its provisions.

In the recitals which precede the agreement of
the parties, it is stated that Mrs. Curtis in her life-
time was the owner of certain shares of the capital
stock of the Continental Motors Company, and upon
its reorganization received in exchange therefor
297,660 shares of the common capital stock of a Vir-
ginia corporation and $496,100 in cash; that she
thereafter transferred 153,114 of said shares of
stock to her son, Benjamin F. Tobin, and also cer-

tain securities acquired by her, with or out of the cash so received by her, of the fair value of $224,242.42; that the United States government had since her death levied an income tax against her estate, including therein the stock and cash she received on such reorganization; that certain persons interested in her estate have asserted that the transfer made by her to her son was not a valid or completed gift, and that certain proceedings were pending in the courts to secure a judicial determination thereof; that if such transfer is valid, the Tobin estate in equity and good conscience is under obligation to the Curtis estate to contribute to the payment of such part of the income tax levied against her estate such sum as the amount her son received from her bears to the whole thereof, and that the parties to the agreement for the purpose of adjusting and compromising their claim and disputes had agreed as follows:

"1.   The Tobin estate shall contribute and pay to the Curtis estate the sum in money which is that proportion of the Federal estate tax levied on the Curtis estate, which the value of the transfer by Cornelia O. Curtis to Benjamin F. Tobin, as determined by the United States internal revenue official in determining the estate tax against the Curtis estate, bears to the total value of the 'net estate for tax,' as determined by said official plus the specific exemption of $50,000.

"2.   The Tobin estate shall contribute and pay to the Curtis estate the sum in money which is that proportion of the additional Federal income tax levied against the Curtis estate for the year or years in which were received by said Cornelia O. Curtis the shares of stock and cash on the reorganization of said Continental Motors Company, which the portion held to constitute taxable income of the amount

or value of the shares of stock and other securities (in the amount or value of $224,242.42, as shown on exhibit 1 hereto attached) received by Benjamin F. Tobin on said transfer or gift from Cornelia O. Curtis bears to the total taxable income accruing to said Cornelia O. Curtis on said reorganization.

"3.    The sums so payable under the foregoing paragraphs numbered 1 and 2 have been calculated in exhibits 1 and 2 respectively hereto attached, to the end of definitely fixing the sums to be contributed and paid if the amount of tax shall remain unchanged.

"In no event shall the amount to be paid by the Tobin estate exceed the amounts shown in said exhibits 1 and 2, namely, $416,125.37, except as interest thereon may be required by the government to be paid, in which event the amount shall be determined as provided in the last sentence of this paragraph numbered 3.    It is understood that the Curtis estate has taken steps, which it is intended to pursue to final conclusion, contesting the validity of said income tax and if such contest shall ultimately result successfully in whole or in part, a redetermination of both the Federal income tax and Federal estate tax will be made necessary.    In the event of a redetermination of either or both said Federal income tax or Federal estate tax, for the reasons mentioned in the last preceding sentence of this paragraph, the sum to be contributed and paid by the Tobin estate shall be recalculated by the formulas or rules stated in paragraphs numbered 1 and 2 hereof, as interpreted by said exhibits 1 and 2, and, if the Tobin estate shall have theretofore paid more than the sum so then determined, the Security Trust Company as executor of and trustee under the will of Cornelia O. Curtis, deceased, shall refund such difference, or if the Tobin estate shall have theretofore paid less than the sums so then determined, the Tobin estate shall pay the difference within the time fixed by the government for the payment of such

further tax. The expense, including attorney's fees of any proceedings resulting in diminution of the total tax shall be taken out of the sum refunded or saved from being paid to the United States government before the division thereof between the Tobin estate and the Curtis estate and the balance shall be divided between the Tobin estate and the Curtis estate in the proportions in which they would have contributed under the formulas or rules of paragraphs numbered 1 and 2 hereof to the amount of the tax had there been no refund or saving from the government. If any proceeding prosecuted for such purpose by the Curtis estate shall not so result, no part of the expense thereof shall be borne by the Tobin estate. Any interest which the government may require to be paid on any tax or may allow on any refund shall be borne or received, as the case may be, by the Curtis estate and the Tobin estate in the same proportions as the tax in respect of which the same is so required or refunded.''

In exhibit 1 the amount of the income tax as levied by the government was divided between the estate of Mrs. Curtis and that of Mr. Tobin, and the amount to be assumed by the latter was fixed at $287,398.48. In exhibit 2 the estate tax so levied was computed at the sum of $214,095.21, and the amount thereof to be assumed by the Tobin estate was fixed at $128,726.89. The liability of the Tobin estate therefor was based upon the fact that the government had required the executor of the Curtis estate to include in its amended return for Federal estate tax purposes the stock and the securities which Mrs. Curtis had transferred to Benjamin F. Tobin on the claim that the gift had been made in contemplation of death.

The income tax is not involved in this litigation. Our only concern is with the estate tax. It was paid under protest by the Curtis estate on August 19,

1924, about three months before the agreement in question was executed, and after its execution the proportion of the Tobin estate was paid by it to the Curtis estate.

On May 14, 1928, the tax department of the government reconsidered its levy of the $128,726.89 for estate tax on the stock and securities which had been transferred to Mr. Tobin and refunded it, with interest thereon, to the executor of the Curtis estate. Acting on the advice of counsel, the executor paid it to the Tobin estate. The question here presented is whether, under the terms of the agreement, it belongs to that estate or to the Curtis estate.

It clearly appears from a part of the recitals and the language in paragraph one of the agreement that the share of the estate tax levied against the Curtis estate which the Tobin estate should pay to it was that which had been levied upon the stock and securities given to Mr. Tobin. In section 3 (omitting reference to the income case) it is provided:

"In the event of a re-determination of    *   *   * Federal estate tax,   *   *   *   the sum to be contributed and paid by the Tobin estate shall be recalculated,   *   *   *   and, if the Tobin estate shall have theretofore paid more than the sum so then determined, the Security Trust Company as executor of and trustee under the will of Cornelia O. Curtis, deceased, shall refund such difference, or if the Tobin estate shall have theretofore paid less than the sums so then determined, the Tobin estate shall pay the difference within the time fixed by the government for the payment of such further tax."

The use of the word "difference" was somewhat unfortunate but, even if it be literally construed, it can but mean the difference between the amount paid by the Curtis estate and the amount it was charged

with on the redetermination of the estate tax by the government, and it is this sum to which the Tobin estate here makes claim.

If the government had finally determined that the stocks and securities given by Mrs. Curtis to Mr. Tobin, amounting to more than $1,000,000, were taxable to her estate, the Tobin estate would not have been entitled to its return, but, when it was determined that they were not taxable, the tax paid under protest was refunded to the Curtis estate, and under a fair construction of the terms of the agreement the executor was justified in returning it to the Tobin estate to which it legally, as well as equitably, belonged.

I concur in the conclusion reached by Mr. Justice Bushnell as to the interveners. A decree will be here entered in conformity with this opinion, with costs to appellants.

North, Wiest, Butzel, and Edward M. Sharpe, JJ., concurred with Nelson Sharpe, J.

Bushnell, J. (*dissenting*). Appellants say the issue created by the pleadings is as to whether the estate of Benjamin F. Tobin, deceased, is to be credited, under an agreement dated November 22, 1924, with a Federal estate tax refund, granted May 14, 1928, to the estate of Cornelia O. Curtis, deceased, in the principal sum of $128,726.89 and interest of $26,791.07, a total of $155,517.96, which refund was obtained by reason of erroneous inclusion within the taxable estate of Mrs. Curtis of certain securities which were a gift *inter vivos* from the mother to the son. The total amount of the refund was $205,033.57, the sum of $128,726.89 being 60.126 per cent. of the original estate tax levy of $214,095.21.

Mrs. Curtis, who died April 28, 1921, was one of the largest individual stockholders of Continental Motors Corporation. On June 10, 1918, she gave her son Benjamin, who predeceased her on November 23, 1920, approximately one-half of her property, consisting of 153,114 shares of Continental common and 696 shares of preferred, together with other securities purchased with a large part of the $500,000 she had received in cash from the re-organization of Continental Motors. Several months later she executed her will by which her son Benjamin and her husband Carlos Curtis were to receive $1,000 each, the residue to be distributed in five testamentary trusts for the children of her deceased son Arthur and her deceased daughter Grace. Plaintiffs are the children of Grace; defendants are the widow of Benjamin, his two children, a daughter of Arthur and the executors and trustees of the two wills; interveners are the children of Benjamin's daughter Marjorie.

The Tobin estate executors included the securities in their inventory and paid the Federal estate tax thereon. The Curtis estate inventory totaled $1,237,740.70, consisting of practically one-half of the original Continental holdings and the remainder of the securities purchased with the re-organization cash payment. The taxable date of the Continental re-organization as finally determined by the taxing authorities became of importance only because of the increase in tax rate in 1917 over 1916. The Federal government, claiming that the re-organization was in law a sale of the stock, levied an additional income tax assessment against all stockholders, so that the Curtis executors on December 4, 1922, were faced with additional assessments of $1,946,612.62, including a tax on the gift, making the tax claims

almost $700,000 more than the inventoried value of the estate, and which, if unchanged, would wipe out the testamentary trusts. When the government learned of an attempt on the part of the Curtis heirs to set aside the gift, an additional assessment of $214,095.20 was made and subsequently paid under protest.

After considerable negotiations between the interested parties and their counsel (although it is here charged that some were not represented at the time), the compromise and settlement agreement first referred to was executed. It purported to cover the understanding reached as to all the differences between them.

The additional income tax assessment to the Curtis estate was finally reduced to $583,410.44 and paid under protest. Claiming the estate tax was twice collected, an attempt was made by the trust company, acting for both the Tobin and Curtis estates, to obtain a refund. Its counsel were successful insofar as the Curtis estate was concerned and a refund in the amount first stated was obtained. The trust company, upon advice of its counsel, took the position that under the agreement the amount of the refund was the property of the Tobin estate, as the Curtis estate had been reimbursed by the Tobin estate for its proportionate amount of the estate tax in connection with which the refund was granted, and therefore credited the Tobin estate on the balance then due to the Curtis estate under the agreement. With this credit established, the Tobin estate then paid the Curtis estate the remaining balance due it.

By bill in equity, an interpretation and judicial determination of the terms and conditions of the settlement agreement was sought. Defendants' an-

swer is a general denial with a prayer for dismissal. Neither fraud nor mistake is alleged and the record shows that both counsel take the position that the written contract is not ambiguous. Plaintiffs secured a decree to the effect that the Tobin estate was not entitled to the credit given by the executor as the agreement only covered such moneys as might be refunded as the result of the income tax assessment. The trial judge, however, observed that the equities were with the defendants, and said:

"I am absolutely satisfied that the thing that was attempted to be accomplished and which would be the right thing to do would be to have the Tobins contribute their share of both taxes in proportion to the amount of property they received. I do not believe that it was ever intended that they would contribute any more than that."

But he added:

"I do not see how you are going to get around the case of *Clark* v. *Castner,* 242 Mich. 608, and the case of *Gauss* v. *First Wayne National Bank,* 264 Mich. 233, and this Federal case in line (*Bispham* v. *Price, Executor,* 56 U. S. [15 How.] 162)."

It is of no particular benefit to the profession, or the public generally, to encumber this opinion with an extended analysis of the disputed questions raised by the appeal, or to indulge in lengthy quotations from the many briefs and voluminous record, it being sufficient to say that the respective parties scarcely agree on anything. The legal questions presented are difficult, although they may be simply stated.

May a court of equity write sufficient language into a settlement agreement in order to cover a subsequently developed situation not anticipated by the

parties? Are the parties bound, by their agreement as made, or by what is claimed by some of them to be its obvious intent?

It is trite to say that hard cases make bad law and that we are constantly confronted with the doctrine of *stare decisis* on the one hand, and the underlying equities on the other. There may be, however, and perhaps ought to be, a difference in the application of the judicial process to matters which involve a public interest and to those which have to do with purely personal and private contractual relationships. Regardless of such speculative views on our part we should, so far as lies within our power, follow the charted course; otherwise no one may safely rely upon written contracts. That we believe to be the implication of the authorities referred to in the opinion of the trial judge. If they be applicable to the pleadings and the facts, they should be followed.

Mr. Justice Campbell said in the *Bispham Case, supra:*

"This court has no competency to supply a providence which the parties to the contract withheld."

In the *Castner Opinion, supra,* the court said, speaking through Mr. Justice Fellows:

"They (the parties) have failed to provide for such a condition and have failed to make a contract with reference to it. The court may not make a contract for them."

We have recently stated the rule of reformation of written contracts in the following language:

"But reformation of written contracts is based upon equitable principles, making the written contract conform to the real agreement between the parties; supplying provisions which should have

been inserted, or omitting therefrom provisions which were inserted. The basis of reformation is fraud or mistake. The court may not supply material stipulations omitted from a contract in the absence of fraud or mistake. It cannot perfect contracts which the parties themselves have left imperfect. It cannot make contracts for the parties. It may only interpret contracts as made. No fraud or mistake is alleged or proven in relation to the contract in question. The court is without jurisdiction to reform the contract." *Gauss* v. *First Wayne Nat. Bank of Detroit,* 264 Mich. 233.

See, also, the authorities therein cited.

At the time the settlement agreement was executed there were two possibilities of a change in the amount of the estate tax: (1) a refund of all or a part of the tax paid, if the government should recede from its position, or a court should hold against the government, or (2) a change in the income tax as a result of pending litigation which would alter the net amount of the estate and therefore change the computation of the estate tax.

The settlement contract so far as it provided for future adjustments between the parties, specifically confined the adjustment of the estate tax to that which would result from the final determination of the income tax, thereby excluding any adjustment of the entire estate tax by reason of a change in the government's position as to it. The adjustment provision is:

"It is understood that the Curtis estate has taken steps, which it is intended to pursue to final conclusion, contesting the validity of said income tax, and if such contest shall ultimately result successfully in whole or in part, a redetermination of both the Federal income tax and Federal estate tax will be necessary. In the event of a redetermination of

either or both said Federal income tax or Federal estate tax, *for the reasons mentioned in the last preceding sentence of this paragraph,* the sum to be contributed and paid by the Tobin estate shall be recalculated,'' etc.

The exclusion of the estate tax itself, except if affected as stated, is not only plain from the language of the settlement agreement, but the extraneous testimony shows conclusively that the parties did not intend to provide for such refund. The scrivener testified that the estate tax as then levied and already paid was deemed to be finally settled and no refund possible. The matter of refund, therefore, was not taken into consideration by the parties. It was only because of subsequent events that a chance for such refund appeared. Prior to the execution of the instant agreement, another had been drafted, which, after reciting that the government was not yet barred by lapse of time from changing either the estate tax or income tax, and that the Curtis estate had taken steps to contest the validity of the income tax (the latter clause, substantially in the words of the present contract) provided:

''In the event of a redetermination of either or both said Federal income tax, or Federal estate tax, *for the reasons mentioned in either or both of the last two preceding sentences of this paragraph,*'' etc.

Under the unsigned draft, the present estate tax refund would have been included. By express language in the instrument at bar, confining the refundable portion of the estate tax to that arising out of a redetermination of the income tax, the instant part of the estate tax is excluded.

The result may be inequitable and even distressing. But of much more importance than the effect

upon these litigants is that of preserving the principle of law, that a final, unambiguous, settlement agreement, not tainted by fraud or mistake, shall stand as written.

We cannot, therefore, rewrite the contract and the decree must be affirmed for, as said by Mr. Justice COOLEY in *Fraser* v. *Fraser's Estate,* 42 Mich. 275, 281:

"The idea of a right to make an equitable defense, based upon circumstances appearing in the case, seems to rest upon this: that, as this claim is one for money had and received, any equity which shows that the claimant in justice is not entitled to it, constitutes a good defense. *Moore* v. *Mandlebaum,* 8 Mich. 433. This is true; but the equity must be one known to the law, and one that can be recognized on the principles which courts of equity administer. An equity against the words of an express contract, where neither want of capacity, illegality, fraud, nor mistake is shown in the making of it, can never be recognized. \* \* \* But inferences are idle here; the contract entered into by competent parties, without fraud or mistake, is not to be affected, changed or qualified by any such considerations as have been suggested. It must stand as written."

We are also required to pass upon the appeal of the intervening minor grandchildren who have appeared by their next friend. Are they bound by the agreement? When the agreement was made, at least three separate proceedings were pending in various courts and other matters than the tax in question were affected thereby. Consequently, the executed agreement was submitted to the probate court then exercising jurisdiction over both the Curtis and Tobin estates, and approved by the probate judge. The interveners, contingent beneficiaries under a trust created for their mother in the Tobin will,

were not parties to the agreement and were not given notice, nor were they made parties to the instant action.

The will of Benjamin Tobin under which they may eventually take contains the following powers:

"I hereby authorize and empower my said executrix and executor to sell, assign, transfer and convey and in any manner dispose of my estate, or any part thereof, at such times, in such manner, on such terms and for such purposes as to my said executrix and executor in the exercise of an honest discretion may seem proper and for the best interests of my estate, giving and granting to my said executrix and executor full power and authority to invest, and re-invest any moneys that shall come into their hands in such manner and upon such terms as shall be deemed proper and for the best interests of my estate."

Interveners' estates are comparable to that described in *Re Blodgett's Estate,* 197 Mich. 455, limited, however, by the effect of the proper exercise of the powers just recited. The Tobin executors were parties to the settlement agreement in 1924; the estate was closed and the residue assigned in 1925. The decree does not seem to pass upon the questions raised by interveners and we hold that such matters are not properly before us, as courts speak through their decrees. We do not, therefore, pass upon any claims which may be directly or indirectly made in behalf of interveners.

The decree should be affirmed, with costs to appellees.

Potter, C. J., and Fead, J., concurred with Bushnell, J.