*In re* BURRUSS ESTATE

VOLLICK v LARSON

Docket No. 83646. Submitted May 7, 1986, at Detroit. Decided June 17, 1986.

Audrey Burruss died testate on July 5, 1982. During her lifetime she had four children: Roland Burruss, Anna Vollick, Jeanne Glaeser and Audrey Larson. Decedent's husband predeceased her, as did Roland Burruss. Audrey Larson also predeceased her mother, but left three children, Charles Larson, Vicki Larson and Joan Larson Scott, the appellants herein. Anna Vollick, the personal representative of the estate of Audrey Burruss, deceased, petitioned in the Wayne Probate Court for construction of the will. The probate court, Joseph J. Pernick, J., found the will to be clear and unambiguous in that Anna and her sister Jeanne were to take the residue of the estate to the exclusion of the appellants. The appellants appealed. *Held:*

1. The findings of the probate court were correct and should be affirmed.

2. The survivorship language contained in the will indicates an intent by the testatrix that Michigan's anti-lapse statute, MCL 700.134(1); MSA 27.5134(1), not be applied to the distribution of her estate.

3. There was no latent ambiguity in decedent's will to necessitate going beyond the four corners of the document to determine intent. The survivorship language here suggests a single meaning. There is no extrinsic fact which creates a possibility of more than one meaning.

Affirmed.

1. WILLS — PROBATE COURTS — JUDICIAL CONSTRUCTION.

The role of the probate court in will cases is to ascertain and give effect to the intent of the testator; the testator's intention is to be derived from the language of the will, unless the will is

REFERENCES

Am Jur 2d, Wills §§ 864, 1047, 1122-1514, 1661-1697.

Validity and construction of gift to A or B, or to A or B or survivor. 19 ALR3d 1213.

Determination of absolute or conditional nature of will. 1 ALR3d 1048.

ambiguous on its face; where there is an ambiguity, the court looks outside the four corners of the will in order to carry out the testator's intention and may consider the surrounding circumstances and rules of construction in establishing intent.

2. Appeal — Probate Courts.

Findings of a probate court sitting without a jury are to be reversed by the Court of Appeals only where they are clearly erroneous.

3. Wills — Anti-Lapse Statute — Judicial Construction.

Michigan's anti-lapse statute applies in the construction of a will unless a contrary intention is indicated by the will (MCL 700.133[2]; MSA 27.5133[2]).

4. Wills — Judicial Construction — Patent Ambiguity — Latent Ambiguity.

Michigan cases have considered two types of ambiguity in the construction of wills; a patent ambiguity exists if an uncertainty as to meaning appears on the face of the instrument and arises from the use of defective, obscure, or insensible language; a latent ambiguity arises where the language used is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates the possibility of more than one meaning.

*Frank Selwa* and *John K. Yoveff,* for Anna Mary Vollick.

*J. Michael Zychowski* and *Robert L. Martin,* for Charles Larson, Vicki Larson and Joan Larson Scott.

Before: Bronson, P.J., and Gribbs and M. E. Clements,* JJ.

Per Curiam. Appellants appeal as of right from an opinion and order of the Wayne Probate Court which construes the last will and testament of Audrey Burruss, deceased. The order denies appellants a share in the residue of decedent's estate. We affirm.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

The underlying facts are not in dispute. Decedent died testate on July 5, 1982. During her lifetime she had four children: Roland Burruss, Anna Vollick, Jeanne Glaeser and Audrey Larson. Decedent's husband predeceased her, as did Roland Burruss. Audrey Larson also predeceased her mother, but left three children, the appellants herein.

Article 3 of decedent's will, dated August 11, 1953, provided as follows:

> In the event my said husband, Peter D. Burruss, should predecease me, or in the event that my husband and I should meet our deaths simultaneously, as in some common catastrophe, then in either of such cases, I give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, wheresoever situated, in equal amounts, share and share alike, to my daughters, Anna Mary Vollick of Redford Township, Wayne County, Michigan, Jeanne Glaeser of Detroit, Michigan and Audrey Larson of Detroit, Michigan, or to the survivor or survivors of them.

Anna Vollick, the personal representative of decedent's estate, petitioned the probate court for construction of the will. Anna argued that she and her sister, Jeanne, should take the residue of the estate to the exclusion of decedent's three grandchildren, the appellants. The appellants' position was that they were entitled to a one-third interest in the residue, claiming the share of their deceased mother, Audrey Larson.

The sole issue considered by the probate court was whether the language, "share and share alike, to my daughters . . . or the survivor or survivors of them," created an ambiguity within the four corners of the will, thereby requiring will construction. The court found that the will was clear

and unambiguous and that it need not go outside the will to interpret it. The court held that the language expressed an intent to make a provision for the death of the beneficiaries contrary to that provided for in Michigan's anti-lapse statute, MCL 700.134(1); MSA 27.5134(1). Appellants were therefore found to have no right, title or interest to decedent's estate.

Appellants first contend that the trial court committed error in finding that decedent's will clearly and unambiguously expressed decedent's intent to give the residue of her estate in equal shares to her living daughters.

The role of the probate court in will cases is to ascertain and give effect to the intent of the testator. *In re Bair Estate,* 128 Mich App 713, 716; 341 NW2d 188 (1983). Unless a will is ambiguous on its face, the testator's intention is derived from the language of the will. *In re Dodge Trust,* 121 Mich App 527, 542; 330 NW2d 72 (1982), lv den, 418 Mich 878 (1983). In the instant case, the probate court found that there was no ambiguity on the face of the will and that the "survivorship" language of article 3 clearly intended to provide for the distribution of the remainder of decedent's estate to her children who were living at the time of her death. The learned judge stated:

> This court finds that the language used by decedent is clear and unambiguous on the face of her will. Testatrix specifically stated that the residue of her estate was to be given to her three daughters "share and share alike . . . or to the survivor or survivors of them." "Them" refers to decedent's three daughters, Anna, Jeanne and Audrey. The survisor(s) [sic] of "them" are Anna and Jeanne because they survived Audrey's death.

Findings of the probate court, sitting without a

jury, are to be reversed by this Court only when clearly erroneous. *In re Wojan Estate,* 126 Mich App 50, 53; 337 NW2d 308 (1983), lv den 418 Mich 873 (1983). In the instant case, the findings of the probate court were correct and should accordingly be affirmed. The testatrix's intent can be ascertained both from the clear language used in the will and from the very presence of such language in the will, read in conjunction with Michigan's anti-lapse statute.

Here, the testatrix left her estate to her three children (listed by name) or to the "survivor or survivors of them." Our Supreme Court has interpreted such "survivorship" language in a manner consistent with the probate court in the case at bar. In *In re Holtforth's Estate,* 298 Mich 708; 299 NW 776 (1941), the Court interpreted the language "[t]o the seven children of my brother, John Holtfort, and the survivor of them," to mean that if one or more of John Holtforth's children should die before the testator, that portion of the testator's estate was to go solely to John Holtforth's surviving children. The Court's ruling excluded the heirs of the deceased seventh child. The Court further held that the language was plain, not ambiguous. A similar interpretation of the survivorship language was used by the Court in *In re Blodgett's Estate,* 197 Mich 455; 163 NW 907 (1917).

The principles set out above must apply to the case at bar. "Survivor" has a well-settled meaning in our law (e.g., joint tenancies with "rights of survivorship"). This language was specifically used in decedent's will by an attorney who can be presumed to know its meaning in this context. Had the drafter of the will wanted to effectuate the testatrix's intent as that intent is perceived by appellants, he could have anticipated the contin-

gency of the death of one of the children by providing for "their children," "their issue," or "their heirs." Rather, he specifically used the word "survivor."

Had the will not contained the survivorship language, appellee concedes that appellants would have taken their deceased mother's share by representation in accordance with Michigan's anti-lapse statute, MCL 700.134(1); MSA 27.5134(1). That statute reads, in pertinent part:

> If a lineal descendant of a grandparent of the testator who is designated as a devisee or would have been a devisee under a class gift had the descendant survived the testator, fails to survive the testator, whether the devisee dies before or after the execution of the will, or is deemed to have predeceased the testator, the issue of the deceased devisee who survive the testator by 120 hours shall take in place of the deceased devisee by representation. A person who would be a devisee under a class gift if that person survived the testator is treated as a devisee for purposes of this section whether that person's death occurred before or after the execution of the will.

This statute, however, applies "unless a contrary intention is indicated by the will." MCL 700.133(2); MSA 27.5133(2). The survivorship language in the instant case indicates a contrary intent, so the statute is inapplicable.

Appellants next contend that the trial court committed error in refusing to consider extrinsic evidence offered by appellants for the purpose of demonstrating the existence of an ambiguity and establishing decedent's intent.

This Court has held that the cardinal rule in will cases is to ascertain and give effect to the intent of the testator. Intent is to be gleaned from

the will itself unless an ambiguity is present. Where there is an ambiguity, the court looks outside the four corners of a will in order to carry out the testator's intent and may consider surrounding circumstances and rules of construction in establishing the intent. *In re Bair Estate, supra,* p 716. Michigan cases have considered two types of ambiguity in the construction of wills, patent and latent. A patent ambiguity exists if an uncertainty as to meaning appears on the face of the instrument and arises from the use of defective, obscure, or insensible language. A latent ambiguity arises where the language used is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates the possibility of more than one meaning. *In re Kremlick Estate,* 417 Mich 237, 240; 331 NW2d 228 (1983), reh den 417 Mich 1143 (1983).

Appellants cite the *Kremlick* decision for the proposition that extrinsic evidence may be used not only to clarify the meaning of the latent ambiguity in a will, but also to establish intent. Relying on *Kremlick,* appellants argue that a letter from the attorney for decedent should have been considered by the probate court. In our opinion, appellants read the *Kremlick* decision too broadly. There, decedent made a bequest to the "Michigan Cancer Society." The appellants therein produced an affidavit from the executrix of Kremlick's estate which indicated that the intended beneficiary was the American Cancer Society, Michigan Division, instead of the Michigan Cancer Society, an affiliate of the Michigan Cancer Foundation. The Court noted:

> The executrix stated that she had discussed the provisions of Mr. Kremlick's will with him on many occasions, and that he frequently had men-

tioned that the American Cancer Society was to be a beneficiary. Appellants also sought to establish that Mr. Kremlick previously had made substantial direct contributions to the American Cancer Society, that the society had helped his wife when she was dying of cancer, and that at the time of her death he requested memorials to the American Cancer Society. [*In re Kremlik,* p 241.]

The Court then analogized the construction of wills to the interpretation of contracts and said that "where an ambiguity *may exist,* extrinsic evidence is admissible" to prove the existence of the ambiguity and to indicate the actual intent of the parties. *Id.,* 241. The Court remanded the case to the trial court because it concluded that the affidavit could be used to establish an ambiguity and resolve it.

We hold that the circumstances of the instant case are distinguishable from those considered in *Kremlick.* Here, there was no latent ambiguity in decedent's will to necessitate going beyond the four corners of the document to determine intent. Here, the "survivorship" language suggests a single meaning. There is no extrinsic "fact" which creates a possibility of more than one meaning. Rather, it is an unsupported interpretation of the language of the will and the appellants' perception of their grandmother's intent that is argued to create such a possibility. The letter received by appellants from decedent's attorney was prepared at appellants' request. That attorney drafted the will for decedent twenty-nine years previously. Under such circumstances, it is doubtful that the letter could even be considered to be reliable or persuasive "evidence" of the decedent's intent.

Surely, *Kremlick* cannot be read to imply that a probate court must look at extrinsic evidence to interpret clear legal language every time there is

a potential beneficiary who is displeased with the disposition of property by a will. If we were to adopt appellants' interpretation of *Kremlick,* no will, no matter how clear the language used, would be safe from the possibility of attack through the introduction of extrinsic "evidence." Consequently, we decline appellants' invitation to impair the certainty of testamentary dispositions.

Affirmed.